[No. 369-2.    Division Two:    June 26, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. STANLEY
DEE ROSE, *Appellant*.

*Ralph E. Olson,* for appellant (appointed counsel for appeal).

*Brian M. Baker, Prosecuting Attorney,* for respondent.

PETRIE, C.J.—The record clearly establishes that the defendant, Stanley D. Rose, and companion, Donald F. Carr,

were discovered by two law enforcement officers in the midst of burglarizing a commercial establishment in Chehalis, Washington on June 21, 1970. In the melee which ensued, the record also shows, Mr. Rose fired several shots from a 9 mm. Browning automatic pistol in the direction of each of the two officers. Mr. Rose, in turn, was ultimately struck by a bullet fired from the gun of one of the officers, ceased firing, was apprehended and subsequently sent to a hospital in an ambulance.

By information dated June 23, 1970, Mr. Rose and Mr. Carr were charged with having committed eight separate crimes arising out of the June 21 affray. Both were scheduled to be tried by a jury on October 13, 1970. Prior to commencement of the trial, but on the first day of defendant's trial, Mr. Carr entered a plea of guilty to several of the crimes charged. By jury verdict, Mr. Rose was found guilty of the four counts in the information which were ultimately presented to them. Those counts alleged as follows:

Count 1. Burglary in Second Degree

The said Stanley Dee Rose, aka Stanley Abel, and Donald Frank Carr, in Lewis County, State of Washington, on or about June 21, 1970, did wilfully, unlawfully and feloniously, while armed with deadly weapons, to-wit: 9 mm. pistol and .38 calibre pistol, did break and enter a building not owned or lawfully occupied by the defendants, to-wit: the Mod Shoppe, situated in Chehalis, being a building wherein property was then and there kept for sale, use and deposit, with intent to commit a crime therein; contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington.

Count 2. Committing Felony while Armed
with Firearm

The said Stanley Dee Rose, aka Stanley Abel, and Donald Frank Carr, in Lewis County, State of Washington, on or about June 21, 1970, did wilfully, unlawfully and feloniously commit a felony, to-wit: Burglary in the Second Degree, while armed with or in possession of firearms, to-wit: 9 mm. pistol and a .38 calibre pistol; contrary to Chapter 175 of 1969 Session Laws and Chapter 9.41 RCW

as amended, and against the peace. and dignity of the State of Washington.

### Count 3. Resisting Arrest by Firing upon
### Law Enforcement Officer

The said Stanley Dee Rose, aka Stanley Abel, in Lewis County, State of Washington, on or about June 21, 1970, did resist Officer Don Schwarz of the Chehalis Police Department, a law enforcement officer, in his lawful attempt to apprehend and arrest him and Donald Frank Carr for the crime of Burglary in the Second Degree as set forth in Count I above, by firing a pistol at and upon him; contrary to Chapter 175 of 1969 Session Laws and Chapter 9.41 RCW as amended, and against the peace and dignity of the State of Washington.

### Count 4. Resisting Arrest by Firing upon
### Law Enforcement Officer

The said Stanley Dee Rose, aka Stanley Abel, in Lewis County, State of Washington, on or about June 21, 1970, did resist Officer Gene Boling of the Lewis County Sheriff's Department, a law enforcement officer, in his lawful attempt to apprehend and arrest him for the crime of Burglary in the Second Degree as set forth in Count I above, by firing a pistol at and upon him; contrary to Chapter 175 of 1969 Session Laws and Chapter 9.41 RCW as amended, and against the peace and dignity of the State of Washington.

Mr. Rose's appeal raises multiple issues which we shall discuss individually.

We consider first the nature of the several counts in the information and the nature of the sentences imposed following the convictions thereon. Count 1 charged the crime of second-degree burglary in violation of RCW 9.19.020[1] while armed with a *deadly* weapon. Upon conviction of count 1, Mr. Rose was sentenced for the statutory maximum term of 15 years. The "deadly weapon" allega-

---

[1]"Every person who, with intent to commit some crime therein shall, under circumstances not amounting to burglary in the first degree, enter the dwelling house of another or break and enter, or, having committed a crime therein, shall break out of, any building or part thereof, or a room or other structure wherein any property is kept for use, sale or deposit, shall be guilty of burglary in the second degree and shall be punished by imprisonment in the state penitentiary for not more than fifteen years."

tion would have permitted the jury to render a special verdict pursuant to RCW 9.95.015 that Mr. Rose was armed with a deadly weapon at the time of the commission of the offense. No special verdict was sought or made by the jury. The Board of Prison Terms and Paroles, therefore, is not required to impose any mandatory minimum sentence. *State v. Coma,* 69 Wn.2d 177, 417 P.2d 853 (1966).

■ Count 2 charged the commission of a "Felony, to-wit: Burglary in the Second Degree, While Armed with or in Possession of Firearms" contrary to RCW 9.41. Judicial suggestion for the use of that informatory language appears in *State v. Canady,* 69 Wn.2d 886, 889, 421 P.2d 347 (1966) as an appropriate manner in which to allege commission of the "new felony" created by RCW 9.41.020 as amended by chapter 124, section 2, Laws of 1961. The difficulty with use of the *Canady* suggestion is that section 2, chapter 175, Laws of 1969, 1st Ex. Ses., specifically repealed RCW 9.41.020 and enacted, in its place, what is now codified as RCW 9.41.025.[2] For a contrast between the new statute and

---

[2]"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;

"(2) For a second offense, or if, in the case of a first conviction of violation of any provision of this section, the offender shall previously have been convicted of violation of the laws of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than seven and one-half years, which sentence shall not be suspended or deferred;

"(3) For a third or subsequent offense, or if the offender shall previously have been convicted two or more times in the aggregate of any violation of the law of the United States or of any other state, territory or district relating to the use or possession of a firearm while committing or attempting to commit a crime, the offender shall be guilty of a felony and shall be imprisoned for not less than fifteen years, which sentence shall not be suspended or deferred;

the repealed statute, as well as the "troubled history" of the Uniform Firearms Act, see *State v. Boyer,* 4 Wn. App. 73, 480 P.2d 257 (1971). Subsection (1) of RCW 9.41.025, as established by the 1969 revision of the firearms act so restructured the 1961 amendment that a "new felony" is no longer defined. *State v. Boyer, supra.* The same may be said of subsections (2) and (3). However, subsection (4), when used in conjunction with either subsections (1), (2) or (3) validly created an increased penalty for an existing crime. *State v. Hines,* 5 Wn. App. 587, 489 P.2d 746 (1971). Count 2 of this information attempted to charge the commission of a "new felony" in violation of either subsection (1), (2) or (3) of RCW 9.41.025. There is no such "new felony." Therefore, the sentence imposed by reason of the conviction of count 2 should be reversed and that count dismissed.

▉ Counts 3 and 4 each alleged violation of RCW 9.41 as amended by chapter 175, Laws of 1969, 1st Ex. Ses., and by the language utilized can *only* refer to subsection (5) of RCW 9.41.025, which provides as follows:

> If any person shall resist apprehension or arrest by firing upon a law enforcement officer, such person shall in addition to the penalty provided by statute for resisting arrest, be guilty of a felony and punished by imprisonment for not less than ten years, which sentence shall not be suspended or deferred.

It seems clear to us that subsection (5) of RCW 9.41.025 was designedly isolated from the other subsections, and was, in fact, intended to stand upon its own as a separate

---

"(4) Misdemeanors or gross misdemeanors categorized as 'Inherently Dangerous' as the term is used in this statute means any of the following crimes or an attempt to commit any of the same: Assault in the third degree, provoking an assault, interfering with a public officer, disturbing a meeting, riot, remaining after warning, obstructing firemen, petit larceny, injury to property, intimidating a public officer, shoplifting, indecent liberties, and soliciting a minor for immoral purposes.

"(5) If any person shall resist apprehension or arrest by firing upon a law enforcement officer, such person shall in addition to the penalty provided by statute for resisting arrest, be guilty of a felony and punished by imprisonment for not less than ten years, which sentence shall not be suspended or deferred."

and distinct portion of the statute unrelated to either the introductory portion of the statute or the other subsections. The use of the period (.) after subsection (4), in contradistinction to the use of a semicolon (;) after each of the other preceding subsections, supports our conclusion. Furthermore, except for the change in the minimum penalty, subsection (5) is a faithful reenactment of the second (unnumbered) paragraph of RCW 9.41.020 as it previously had been amended by section 2, chapter 124, Laws of 1961. The rationale of a "new felony" as declared in *State v. Canady*, *supra*, would appear, therefore, to be still valid as to counts 3 and 4. We conclude, therefore, that subsection (5)—because it proscribes precise activity—does itself create a new felony. Counts 3 and 4, therefore, properly charged valid crimes under the law of the state.

Upon his conviction of count 3, Mr. Rose was sentenced to a maximum term of 20 years, and upon his conviction of count 4, he was also sentenced to a maximum term of 20 years. The sentences were declared by the court to run consecutively and were to commence upon completion of his sentence imposed by reason of his convictions under counts 1 and 2. The statutory minimum term of 10 years is applicable to count 3 and to count 4. RCW 9.41.025(5). Because we have dismissed count 2, the maximum period of his confinement under the three remaining counts, all of which now run consecutively, is 55 years; his statutory minimum term is 20 years.

The defendant contends that the trial court erred in requiring that his sentences run consecutively. The basis for this contention appears to be twofold: (1) that the totality of the maximum sentences constitutes cruel, unusual and harsh punishment; and (2) that all the counts charged are part of a single act.

At the time of the commission of these crimes and imposition of judgment and sentence, it was the law of this state that when two or more convictions were obtained on an information charging more than one crime, the court may have sentenced the defendant to either consecutive or

concurrent terms. RCW 9.92.080;[3] *Grieve v. Smith,* 26 Wn.2d 156, 173 P.2d 168 (1946); *State v. Miles,* 77 Wn.2d 593, 464 P.2d 723 (1970). The constitutional impediments to types of punishment are limited to cruel or unusual punishment—not harsh punishment. U.S. Const. amend. 8; Const. art. 1, § 14. All punishment by confinement in a penitentiary is harsh in the sense that it is strongly unpleasant to the person upon whom it is inflicted. We do not, however, find that the statutory minimum period of confinement or the statutory maximum period of control is either cruel or unusual in view of the gravity of the crimes perpetrated by the defendant. *See State v. Cerny,* 78 Wn.2d 845, 480 P.2d 199 (1971).

Neither do we find any merit in the defendant's contention that consecutive sentences are prohibited because they all result from the commission of a single act. The thrust of defendant's contention is that all of the counts charged amount to the commission of only one *offense.* The test to be applied to determine whether or not there is only one offense, is whether each count requires proof of an additional fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932). *See also Gore v. United States,* 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S. Ct. 1280 (1958). Certainly the act of burglary, charged in count 1, cannot, in any sense, be considered the same offense as "Resisting Arrest" as charged in counts 3 and 4. Clearly, also, count 3 alleged, and required proof, that the defendant resisted Officer Schwarz and fired at and upon him, whereas count 4 alleged, and required proof, that the defendant resisted Officer Boling and fired at and upon him—again two distinct acts.[4]

It is conceivable, but by no means readily apparent, that the real thrust of defendant's contention is that the required proof of count 3 *is* precisely the same as the re-

[3]We make no attempt to interpret RCW 9.92.080 as amended by chapter 295, section 1, Laws of 1971, 1st Ex. Ses., which became effective August 9, 1971.

[4]The record clearly establishes that the two officers approached Mr. Rose from two different directions.

quired proof of count 4—that he did resist arrest. The argument would follow, then, that the act of firing at or upon a law enforcement officer while resisting arrest (1) had a relationship only to the sentence to be imposed and was not an essential part of the crime charged, or (2) while it may have constituted an essential part of the crime charged, was all part of one *continuing* offense of resisting arrest. With regard to the former, we have already noted that subsection (5) of RCW 9.41.025 created a "new felony" and obviously, the firing upon a law enforcement officer is an essential element of that crime. With regard to the latter, we are forced to examine the gravamen of the offense committed when a person does resist apprehension or arrest.

There is no state statute identifying the elements of a crime specifically known by the name of "resisting arrest."[5] The foundational basis for such a crime is contained in either (1) the statutory definition of second-degree assault, RCW 9.11.020, which provides in part:

> Every person who, under circumstances not amounting to assault in the first degree—
>
> . . .
>
> (6) Shall assault another with intent . . . to prevent or resist . . . the lawful apprehension or detention of himself or another person; . . .
>
> . . .
>
> Shall be guilty of assault in the second degree . . .

or (2) the statutory definition of obstructing justice, RCW 9.69.040, which provides as follows:

> Every person who, in any case or under any circumstances not otherwise specially provided for, shall wilfully resist, delay or obstruct a public officer in discharging or attempting to discharge any legal duty of his office, shall be guilty of a misdemeanor.

Thus, in either case, the gravamen of the crime is not the resistance to arrest, but rather the assault upon or the resistance to another. The crime is specific and separate as

---

[5]Some municipal ordinances do define such a crime. *See,* for example, *Tacoma v. Harris,* 73 Wn.2d 123, 436 P.2d 770 (1968).

to each person assaulted or resisted and not an offense continuous in its character.

Therefore, under no conceivable interpretation of defendant's contention can it be said that the trial court committed error by requiring that the sentences imposed for each count run consecutively.

The defendant contends that counts 3 and 4 are unconstitutional, both because the statute defining the crimes enunciates a vague element of "firing *upon* a law enforcement officer" and also because the crime creates a special privilege to the class of law enforcement officers. (Italics ours.)

The doctrine that a statute is void for vagueness rests upon its repugnancy to the due process clause of the fourteenth amendment to the United States Constitution. The constitution does not require impossible standards of specificity in penal statutes. The test of granting sufficient warning as to proscribed conduct will be met if there are well-settled and ordinarily understood meanings for the words employed when viewed in the context of the entire statutory provision. *State v. Oyen*, 78 Wn.2d 909, 480 P.2d 766 (1971). Under such a test, we are satisfied that the words "firing upon" impart a sufficient warning that "firing a pistol at or upon" a law enforcement officer in the act of making a lawful arrest constitutes a proscribed course of conduct for which a perpetrator may be confined in the penitentiary. We do not find any unconstitutional vagueness in the statute.

The challenge that a favored class of people—law enforcement officers—is created by the statute challenges the statute as violative of the equal protection clause of the fourteenth amendment to the United States Constitution and of the equal privileges and immunities provisions of article 1, section 12 of the state constitution. We note, preliminarily, that the statute, RCW 9.41.025, applies equally to *all* persons who resist apprehension or arrest by firing upon a law enforcement officer. As such, of course, no class distinction has been created. However, defendant takes the position that the class of law enforcement officers somehow

receives unwarranted preferential treatment because one who fires upon the person who is attempting to arrest him is subject to a more stringent penalty, by virtue of this statute, simply because the person fired upon coincidentally happens to be a law enforcement officer. Assuming that there is arguable merit to this obtuse contention, it must be recognized that a statutory enactment cannot be successfully attacked unless the discrimination or inequality produced by the particular classification is manifestly arbitrary, unreasonable, inequitable or unjust. *State v. Persinger*, 62 Wn.2d 362, 382 P.2d 497 (1963). The purpose behind the distinction must be examined to determine whether or not there is a reasonable basis for the classification. *Sparkman & McLean Co. v. Govan Inv. Trust*, 78 Wn.2d 584, 478 P.2d 232 (1970). To state the proposition in that manner is to answer it. There can be no doubt that the legislature has the power to enact a penal provision designedly attempting to discourage persons from firing upon law enforcement officers engaged in their task of arresting those whom they are lawfully bound to arrest.

The defendant contends, next, that the sentences imposed under counts 3 and 4 are illegal and void because the mandatory minimum term imposed under RCW 9.41.025(5), "which sentence shall not be suspended or deferred" denies him what he calls his *right* to have his sentence stayed or suspended pursuant to RCW 9.92.060. There is no merit to this contention. A defendant whose guilt has been established has no right to a suspension of the execution of his sentence or to probation; these come to him as an act of grace or leniency when the court has discretion to grant them. *State v. Giraud*, 68 Wn.2d 176, 412 P.2d 104 (1966). Further, it is within the power of the legislature to prohibit the court from suspending or deferring imposition of sentence. *State v. Boyer, supra; State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 416 P.2d 670 (1966).

Defendant also contends that the sentences imposed under counts 3 and 4 are unconstitutionally vague because they are based upon a statute, RCW 9.41.025(5),

which imposes no *maximum* penalty, and therefore they violate due process. Clearly, the maximum sentence of 20 years which the court imposed was that specified under RCW 9.95.010.[6] Although the defendant does not appear to raise the precise point that an irreconcilable vagueness is created because of the difference in maximum terms established under RCW 9.92.010[7] and 9.95.010, we believe the generality of his assignment, coupled with the potential long-term confinement which he is facing, warrants resolution of that problem as well. The 10-year maximum sentence, established by RCW 9.92.010, is applicable to those felonies for which "no *punishment* is specially prescribed by any statutory provision in force at the time of conviction and sentence." (Italics ours.) *Klapproth v. Squier,* 50 Wn.2d 675, 314 P.2d 430 (1957). The 20-year maximum sentence or any greater maximum up to and including life imprisonment, established by RCW 9.95.010, is applicable to those felonies for which "the law does not provide a *maximum* term." (Italics ours.) *State v. Palmer,* 73 Wn.2d 462, 438 P.2d 876 (1968). Clearly, RCW 9.92.010 was inapplicable because a punishment—minimum term—was specifically provided by the terms of RCW 9.41.025 (5).

The defendant also contends that the information should

---

[6]RCW 9.95.010 provides: "When a person is convicted of any felony, except treason, murder in the first degree, or carnal knowledge of a child under ten years, and a new trial is not granted, the court shall sentence such person to the penitentiary, or, if the law allows and the court sees fit to exercise such discretion, to the reformatory, and shall fix the maximum term of such person's sentence only.

"The maximum term to be fixed by the court shall be the maximum provided by law for the crime of which such person was convicted, if the law provides for a maximum term. If the law does not provide a maximum term for the crime of which such person was convicted the court shall fix such maximum term, which may be for any number of years up to and including life imprisonment but in any case where the maximum term is fixed by the court it shall be fixed at not less than twenty years."

[7]RCW 9.92.010 provides: "Every person convicted of a felony for which no punishment is specially prescribed by any statutory provision in force at the time of conviction and sentence, shall be punished by imprisonment in the state penitentiary for not more than ten years, or by a fine of not more than five thousand dollars, or by both."

have been dismissed because he was not brought to trial within 60 days after the information had been filed; thus RCW 10.46.010 had been violated. A full and complete answer to this contention is contained in *State v. Falter*, 6 Wn. App. 665, 495 P.2d 694 (1972).

Mr. Rose asserts that prejudicial error requiring new trial was committed at his trial when the jury was advised that he was also known as Stanley Abel, an alias unestablished by any proof in the record. In support of this assertion, he directs our attention to *State v. Smith*, 55 Wn.2d 482, 348 P.2d 417 (1960). In *Smith* the information, which charged a woman with the crime of grand larceny, alleged that the defendant used a series of names. At the close of the evidence, the court attempted to remove the unproved aliases, but, by mistake, the aliases went to the jury on the cover sheet of the instructions and on the verdict forms. The state therein admitted that submitting aliases to the jury was error, but claimed no prejudice resulted. The defendant was convicted and upon appeal, the court reversed and ordered a new trial, stating in part at page 484:

> It is common knowledge that the use of aliases is frequently associated in the public mind with the so-called "criminal" class. We cannot assume that the jury was unaffected by the unproved aliases. To do so would be sheer speculation. The doubt must be resolved in favor of the accused.

The thrust of the opinion in *Smith*, as we understand it, is that transmittal to the jury of a series of aliases may well have deprived the defendant therein of a fair trial. In the case at bench the instructions to the jury were not made a part of the record. While we are made aware that the title to the information and the allegations in the specific counts therein assert that Mr. Rose was "aka Stanley Abel", we have no knowledge that the jury was so advised. Indeed, the form of the verdict, which *is* before us, and which was signed by the foreman of the jury, made no reference whatsoever to an alias. Not having before us either the cover sheet or the instructions themselves, we cannot tell, what, if anything, was presented to the jury regard-

ing any alias. The only document before us, to which the jury also had access, indicates that no indication of an alias was given to the jury. We find no merit to this contention.

Next, Mr. Rose contends that he was denied a fair trial because, during the second day of trial, after a local newspaper on the preceding evening had apparently carried a story of Mr. Carr's plea of guilty, the court denied his motion to examine the jurors to ascertain whether or not any of the jurors had seen or read the newspaper story. Such a motion is ordinarily directed to the sound discretion of the trial court, and appellate courts have been most reluctant to disturb the trial courts' discretion absent a convincing showing of an abuse of discretion. *State v. Malone*, 75 Wn.2d 612, 452 P.2d 963 (1969). However, it has now been determined definitively that an affirmative showing of actual prejudice is no longer necessary. *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971). From our independent review of the record as a whole, we cannot conclude that the probability of prejudice to this defendant was so apparent that it was error to deny the motion to examine the jurors.

Finally, the defendant contends that the trial court committed error by failing to instruct the jury that it must consider unconsciousness or partial unconsciousness as a total defense for any acts that may have been committed after being shot. We need not address ourselves to such a proposition. There is no showing in the record that the defendant did any act constituting a crime *after* he was shot. Furthermore, no specific instructions, whose propriety we could establish or reject, were ever presented to the trial court. There is, therefore, no merit to this contention.

Judgment affirmed as to counts 1, 3 and 4; reversed as to count 2 with direction to dismiss said count.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied August 2, 1972.

Review denied by Supreme Court December 15, 1972.