[No. 3450-1. Division One. August 16, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. NORMAN ALLEN GIBSON, *Appellant*.

120

ANDERSEN, J., concurs by separate opinion.

*Cook, Eugster & McMahon* and *Douglas Cook,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Charles S. Hamilton III, Deputy,* for respondent.

JAMES, J.—At jury trial, Norman Gibson was found guilty of taking a motor vehicle without permission. RCW 9.54.020. At a subsequent hearing, he was found to be a habitual criminal on the basis of prior convictions for four felonies. Believing he had no discretion to suspend sentence, the trial judge imposed a life sentence as provided by RCW 9.92.090. We affirm the judgment of conviction for taking the motor vehicle as well as the habitual criminal conviction. We hold, however, that the trial judge had discretion to suspend the life sentence and we, therefore, remand the cause for the exercise of such discretion.

Gibson first argues that the conviction for taking a motor vehicle without permission should be reversed. His asserted reasons are (1) the trial judge erred in finding that RCW

9.54.020 was not repealed by implication by the amendment in 1971 of RCW 9.61.040(8) which makes it a misdemeanor to "drive away, without authority, the . . . automobile . . . of another from the place where left by the owner . . ."; (2) in the alternative, the trial judge erred by his failure to find that the existence of the two statutes gave the prosecutor unconstitutionally broad discretion to charge under either, thereby violating Gibson's right to equal protection of the law; (3) the trial judge erred by permitting a police detective to testify over objection that two witnesses had, without hesitation, identified Gibson as the perpetrator of the crime from pictures he had separately shown them at a time when Gibson was allegedly in custody and available for an in-person lineup; and (4) the trial judge erred by admitting the photographs into evidence.

Gibson next asserts two reasons why the life sentence, imposed as the result of a finding that he was a habitual criminal, should be reversed. He contends that the sentence constituted cruel and unusual punishment because the crimes for which he had been previously convicted were not of a violent nature and because the crimes were directly related to alcoholism. Second, he argues that the trial judge had discretion to suspend the life sentence and was mistaken when he found to the contrary.

Gibson was arrested by a state patrol trooper on February 28, 1974, for driving while under the influence of an intoxicant in violation of RCW 46.61.515. A vehicle check revealed that the vehicle had been reported stolen the evening before. Gibson claimed he had received a call earlier that night from a woman who said she would leave money and keys in an envelope in a certain car if he would pick up the car and drive it to another place. He claimed that he agreed and was stopped while driving the car.

Testimony at trial established that the owner of the vehicle had advertised it for sale. A man inquired in person regarding the automobile at the owner's home on February 26. He was told by the owner's sister and mother to return another time because the owner was not home. Both

women identified Gibson in court as the man who called.

The next day, a man called in person. He wanted to take the car for a test drive. The sister and mother did not see him. The owner gave him the only set of keys. He returned a half hour later and indicated he would call later and make an offer. That night, the car was stolen. The owner identified Gibson in court as the man who drove her car.

Several days following the theft, a police detective went to the owner's home and separately showed the owner and her sister photographs of six individuals. He stated that each woman identified Gibson without hesitation as the man who inquired about the car. When questioned concerning his method of selecting the photographs, he stated that he started with Gibson's and then selected five others who generally resembled him. There is no indication anywhere in the record whether Gibson was in custody and available for an in-person lineup at the time of the photographic showing. The photographs were admitted into evidence.

At the hearing respecting Gibson's alleged status as a habitual criminal, the State introduced copies of prior convictions for four felonies in addition to the conviction for taking the motor vehicle without permission. At the sentencing hearing, the trial judge indicated a reluctance to impose a life sentence. He concluded, however, that he had no discretion to do otherwise and imposed the sentence stating:

> I would like to have it in the record, that I don't think I have the power to suspend a habitual criminal sentence. Now, if I am wrong on that I would be very glad to reconsider.

## I.

We deal first with the argument that we should reverse the conviction for taking a motor vehicle without permission. RCW 9.54.020. Gibson argues that RCW 9.61.040(8), as amended in 1971, repealed by implication RCW 9.54.020; or, in the alternative, that the existence of two statutes is a violation of his right to equal protection of the law. U.S. Const. amend. 14, § 1. Both contentions have been rejected

recently by our Supreme Court. *State v. Sam,* 85 Wn.2d 713, 538 P.2d 1209 (1975).

Gibson next contends that reversible error occurred when the police detective testified over objection that two witnesses identified him without hesitation from a photographic lineup. Insofar as the detective's testimony dealt with what the women said, it constituted hearsay since it was offered to prove the truth of what they asserted. Nevertheless, such evidence is admissible as an exception to the hearsay rule both as substantive and corroborative evidence. *State v. Simmons,* 63 Wn.2d 17, 385 P.2d 389 (1963); *State v. Bergen,* 13 Wn. App. 974, 538 P.2d 533 (1975).

In addition, he contends that the photographic lineup was prejudicial. We recognize that where practicable a lineup identification is preferable to photographic identification. *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972). However, we hold no error occurred here. There is no indication that Gibson was in custody and available for showing when the photographic lineup occurred. We have viewed the photographs shown and find nothing which is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968). The six photographs were of similar size and shape. All were in black and white. Each individual displayed exhibited similar age, race, physique, and style of dress characteristics. There was nothing to suggest that Gibson's picture was a "mug shot" while the others were not. The only apparent distinction was that Gibson's hair style was different; he had a flattop style while the others had hair of short to moderate length. In view of the similarities, the single difference in hair style was not significant. *See State v. Butler,* 11 Wn. App. 605, 524 P.2d 488 (1974). It follows that the testimony was admissible.

Finally, Gibson contends that prejudicial error occurred when the photographs were introduced into evidence. There was no error. Gibson cites no case which would support reversal. The rule is that evidence of extra-

judicial identifications is admissible in a trial where, as here, identity of the accused is in issue. Our Supreme Court, in adopting such a rule, stated:

> Wigmore points out that identification of an accused in the courtroom (judicial identification) is of little testimonial force, as, after all that has intervened, it would seldom happen that the witness would not have come to believe in the accused's identity; and that it is entirely proper to corroborate the witness by proving that at a prior time, when suggestions of others could not have intervened to create a fancied recognition in the mind of the witness, he had recognized and declared the present accused to be the guilty person (an extrajudicial identification).

*State v. Wilson*, 38 Wn.2d 593, 617, 231 P.2d 288 (1951).

We, therefore, find no error in Gibson's conviction for taking a motor vehicle without permission. That judgment of conviction is affirmed.

## II.

We now deal with the imposition of a life sentence resulting from the finding that Gibson is a habitual criminal. He first contends that the sentence as applied to him constitutes cruel and unusual punishment. U.S. Const. amend. 8. He relies on *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973). The court there found that application of a West Virginia recidivist statute to the defendant constituted cruel and unusual punishment in view of the relatively minor crimes for which he was convicted—a conviction for writing a check for $50 on an account containing insufficient funds, a conviction for interstate transportation of forged checks worth $140, and a conviction for perjury in his son's murder trial. Gibson argues that his prior criminal record is related directly to his chronic alcoholism and consists of nonviolent crimes against property. He contends that he has reformed as the result of treatment and is no longer an alcoholic or likely to commit crimes. He claims that we ought to apply the rationale of *Hart v. Coiner, supra*, and reverse.

The legislature, however, has not chosen to relate the

status of habitual criminal solely to crimes of violence. Nor does it except alcoholics from its application. The relevant portion of RCW 9.92.090 provides:

> Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

As we have pointed out, Gibson has accumulated, in addition to the present conviction, convictions for four felonies: In Hawaii, four counts of theft of government property; in Washington, grand larceny, three counts of first-degree forgery, and two convictions for second-degree burglary. It is uncontroverted that the theft convictions in Hawaii would constitute felonies in the state of Washington. Clearly then, *Hart v. Coiner, supra,* is not applicable in view of the substantial number and nature of Gibson's prior convictions.

As early as 1909, our Supreme Court held that imposition of a life sentence on one found to be a habitual criminal did not constitute cruel and unusual punishment. *State v. Le Pitre,* 54 Wash. 166, 103 P. 27 (1909). Harsh punishment alone is not cruel and unusual punishment. *State v. Rose,* 7 Wn. App. 176, 498 P.2d 897 (1972), *cert. denied,* 414 U.S. 835, 38 L. Ed. 2d 70, 94 S. Ct. 177 (1973). A recognized test is whether, in view of contemporary standards of elemental decency, the punishment is of such disproportionate character to the offense as to shock the general conscience and violate principles of fundamental fairness. *See Workman v. Commonwealth,* 429 S.W.2d 374 (Ky. 1968). Factors to be considered are the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment meted out in other jurisdic-

tions for the same offense, and a comparison of punishment meted out for similar offenses in the same jurisdiction. *Hart v. Coiner, supra.* We hold that under these facts, the life sentence was not cruel and unusual punishment.

We turn to Gibson's final contention, namely, that the trial judge had discretion to suspend the habitual criminal life sentence. The State contends that there is no discretion because the life sentence is mandatory. *State v. Bryant,* 73 Wn.2d 168, 437 P.2d 398 (1968). The sentence is mandatory, but we find no authority which precludes a subsequent suspension of the execution of the sentence by the trial judge. While this presents a question of first impression for this jurisdiction, it has been decided elsewhere by a unanimous court that such discretion exists under a similar statutory scheme. *Hogan v. Bohan,* 279 App. Div. 1043, 113 N.Y.S.2d 280 (1952), *aff'd,* 305 N.Y. 110, 111 N.E.2d 233 (1953). There the trial judge had ruled that he had no discretion to suspend sentence:

> The theory of sections 1941 and 1942 of the Penal Law (the so-called Baumes Laws), which prescribe increased punishment for previous felony offenders is that they have not reformed since their first offense but have persisted in breaking the law. . . . These statutes are mandatory. They provide a "mechanistic rule" to take the place of the discretionary powers of the court in passing sentence on prior felony offenders.

(Citations omitted.) *Hogan v. Bohan,* 200 Misc. 15, 18, 101 N.Y.S.2d 866 (1951). In reversing, the appellate court held:

> We think that the Court of General Sessions was required to pronounce judgment but it was not required to impose sentence of a prison term. It is within the discretion of the Court of General Sessions to impose a prison sentence or to suspend sentence.

*Hogan v. Bohan,* 279 App. Div. 1043, 113 N.Y.S.2d 280 (1952), *aff'd,* 305 N.Y. 110, 111 N.E.2d 233 (1953). We agree.

Being adjudged a habitual criminal under RCW 9.92.090 is a status, not a crime. *State v. Tatum,* 61 Wn.2d 576, 379 P.2d 372 (1963). The consequence of attaining such

status is enhancement of the punishment meted out for the underlying offense. *State v. Wait*, 9 Wn. App. 136, 509 P.2d 372, 65 A.L.R.3d 578 (1973). Thus, the mandatory life sentence here is for taking a motor vehicle without permission, RCW 9.54.020, enhancing the usual penalty meted out under RCW 9.92.010.

There is no inherent authority to suspend sentences in the absence of a statute. *State ex rel. Lundin v. Superior Court*, 102 Wash. 600, 174 P. 473 (1918). The authority to suspend is found in RCW 9.92.060, which provides in pertinent part:

> Whenever any person shall be convicted of any crime except murder, burglary in the first degree, arson in the first degree, robbery, carnal knowledge of a female child under the age of ten years, or rape, the court may in its discretion, at the time of imposing sentence upon such person, direct that such sentence be stayed and suspended until otherwise ordered by such court, . . .

Taking a motor vehicle without permission is not one of the crimes excepted from the trial judge's discretionary power to suspend sentences. Nor is there any language in the statute from which to conclude that the discretionary power to suspend is lost once a defendant has been adjudged a habitual criminal. The habitual criminal statute does not contain such language. RCW 9.92.090. Finally, the statute which prescribes the penalty for taking and riding in a motor vehicle contains no language restricting the trial judge's discretionary power. RCW 9.92.010.

Literal and strict interpretation must be given criminal statutes. *State v. Bell*, 83 Wn.2d 383, 518 P.2d 696 (1974). The legislature is presumed to intend the plain meaning of its language. *Schneider v. Forcier*, 67 Wn.2d 161, 406 P.2d 935 (1965). Had the legislature intended to except the discretionary power to suspend in cases where a defendant had been adjudged a habitual criminal, it could have done so as it did in RCW 9.41.025, relating to penalties to be imposed for resisting arrest while armed with a firearm or for the commission of an inherently dangerous crime while armed with a firearm. Reading the various statutes together

persuades us that the legislature chose not to so restrict a trial judge's discretion.

We, therefore, remand to enable the trial judge to exercise discretion concerning the propriety of a suspended sentence for Gibson's conviction for taking a motor vehicle without permission.

FARRIS, J., concurs.

ANDERSEN, J. (concurring)—I agree with the holding of my fellow judges in this case, including the holding that the suspension of sentence statute[1] does give the trial judge the right to suspend this defendant's sentence should that judge in the exercise of his discretion decide to do so.

I do not, however, agree with that portion of the opinion which reasons that the legislature *chose* not to restrict the trial judge's discretion in cases such as this one. To my view, the right to suspend the sentence of a defendant who has been adjudged to be a habitual criminal, exists only because of an entirely *unintended* consequence of an amendment to the suspension of sentence statute enacted by the 1957 legislature.

In the present case the outcome is the same whether the legislative action was intentional or inadvertent; but if this is a gap in the law as a result of legislative inadvertence, as I perceive it to be, then it merits prompt correction by that body. It is the purpose of this separate concurring opinion to direct what I believe to have been a legislative oversight to the attention of the legislature so that it may be corrected by the legislature, if it desires to do so.

Courts, of course, have no inherent authority to suspend or defer the imposition of sentence on their own; the only authority they have in that regard is such authority as has been granted them by the legislature.[2]

As to a few particularly heinous offenses, none of which are pertinent to the present case, the authority to suspend

---

[1] RCW 9.92.060.

[2] *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 69, 416 P.2d 670 (1966); *State v. Butterfield*, 12 Wn. App. 745, 747, 529 P.2d 901 (1974).

imposition of sentence has never been granted.[3] Other than as to such offenses, however, statutes relating to suspension and deferment of sentence have been increasingly liberalized over the years.[4]

Originally, the legislature only permitted sentences to be suspended where the convicted persons were "under the age of twenty-one years".[5] Then in 1921, it was provided that suspended sentences could be given to "any person never before convicted of a felony or gross misdemeanor".[6] Finally, by a 1957 amendment to the suspended sentence statute, the legislature extended authority to the courts to suspend sentences of "any person," and this is now the law.[7]

As to the defendant in the present case, there is nothing in the statutory law which prohibits a judge from granting him a suspended sentence and inasmuch as the 1957 amendment to the suspended sentence statute permits the suspension of sentence for "any person" (see footnote 7), the trial court does have such discretion. Nevertheless, I do not believe the legislature ever intended that a trial court should have the discretion to suspend the sentence of a person adjudged to be a habitual criminal. My reasons are these.

Since shortly after the turn of the century, it has been a part of the statutory law of this state that persons such as the defendant who have been charged by a prosecuting attorney with being a habitual criminal, and who have

[3]This state's suspension of sentence statute has always specifically provided that sentences could not be suspended where the conviction is for murder, burglary in the first degree, arson in the first degree, robbery, carnal knowledge of a female child under the age of 10 years or rape. Laws of 1905, ch. 24, § 1, p. 49; Laws of 1909, ch. 249, § 28, p. 896; Laws of 1921, ch. 69, § 1, p. 204; Laws of 1949, ch. 76, § 1, p. 172; Laws of 1957, ch. 227, § 1, p. 889; Laws of 1967, ch. 200, § 7, p. 1009.

[4]The history and changes in the suspended and deferred sentence statutes are admirably summarized in the opinion for the court by Hill, J. in *State v. Davis*, 56 Wn.2d 729, 355 P.2d 344 (1960).

[5]Laws of 1909, ch. 249, § 28, p. 896.

[6]Laws of 1921, ch. 69, § 1, p. 204.

[7]Laws of 1957, ch. 227, § 1, p. 889; RCW 9.92.060.

been proved to have had the requisite prior convictions, "shall be punished by imprisonment in the state penitentiary for life."[8] By the terms of another statute, the Board of Prison Terms and Paroles is further admonished that in such cases "the duration of confinement shall not be fixed at less than fifteen years" and, further, that the board "shall retain jurisdiction over such convicted person throughout his natural life unless the governor by appropriate executive action orders otherwise."[9]

Habitual criminal statutes, such as our own, do not create a distinct offense but impose a heavier punishment for the latest offense because of the earlier ones.[10]

Our State Supreme Court has held that our habitual criminal statute is "sound in principle and sustained by reason."[11] The public policy behind this state's habitual criminal law is simply this:

> Aside from the offender and his victim, there is always another party concerned in every crime committed—the state; and it does no violence to any constitutional guarantee for the state to rid itself of depravity when its efforts to reform have failed.

*State v. Le Pitre*, 54 Wash. 166, 168, 103 P. 27 (1909).

Society has a right to protect itself against repeated depredations by persons who have demonstrated time and time again that they cannot or will not be reformed by the criminal justice system. To this end, the state legislature has enacted statutes providing that persons found to be habitual criminals by reason of repeated convictions of certain felonies shall be sentenced to life imprisonment without possibility of parole for 15 years and then with lifetime parole supervision following that. It makes no sense at all

---

[8] Laws of 1909, ch. 249, § 34, p. 899; RCW 9.92.090.

[9] RCW 9.95.040(3).

[10] *Graham v. West Virginia*, 224 U.S. 616, 623, 56 L. Ed. 917, 32 S. Ct. 583 (1911); *State v. Miles*, 34 Wn.2d 55, 62, 207 P.2d 1209 (1949). See also 5 R. Anderson, *Wharton's Criminal Law and Procedure* § 2218 (1957); and 39 Am. Jur. 2d *Habitual Criminals and Subsequent Offenders* § 2 (1968).

[11] *State v. Le Pitre*, 54 Wash. 166, 168, 103 P. 27 (1909).

for another statute to permit this entire habitual criminal procedure to be circumvented by the simple expediency of allowing a trial judge to suspend the sentence of a person found by the jury or other trier of the fact to be a habitual criminal. There is nothing in the legislative history of the 1957 amendment to the suspension of sentence statute that even suggests that such an anomaly was ever intended by the legislature, yet that is precisely what the literal language of the 1957 amendment permitted.

It is easy enough to see how such an error could creep into an amendment to that statute adopted during a busy legislative session. The suspension of sentence statute, by its terms, relates to suspending sentences for *crimes*. Changes in that statute could therefore have been thought not to relate to the habitual criminal statute which is well understood to create a *status* and not a crime.[12] However, when a habitual criminal is sentenced, he or she is sentenced for the underlying crime (auto theft in this case) but with the enhanced penalty provided by the habitual criminal statute, so the suspended sentence statute is directly pertinent.[13]

I am satisfied the legislature never intended to permit a trial judge to suspend the sentence of one adjudged to be a habitual criminal; and if mistake it was, and I believe it to have been, it is up to the legislature to correct the language of its own enactment. This court cannot do so in the face of the statutory language presented.[14]

---

[12]*State v. Tatum*, 61 Wn.2d 576, 578, 379 P.2d 372 (1963); *State v. Nixon*, 10 Wn. App. 355, 359, 517 P.2d 212 (1973). The consideration of a habitual criminal as a status, rather than a crime, is more than just a difference in nomenclature. If being a habitual criminal were a crime, the statute would run afoul of such federal and state constitutional provisions as those prohibiting double jeopardy.

[13]*State v. Tatum*, 61 Wn.2d 576, 379 P.2d 372 (1963); *State v. Nixon*, 10 Wn. App. 355, 517 P.2d 212 (1973).

[14]*See Lappin v. Lucurell*, 13 Wn. App. 277, 291, 534 P.2d 1038 (1975).