[No. 2012–3.   Division Three.   June 16, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. LOUIS JEROME MARKOVICH, *Appellant*.

---

*Emmet T. Walsh, Malcolm L. Edwards,* and *Edwards, Wetherall & Barbieri,* for appellant.

*L. Eugene Hanson, Prosecuting Attorney,* for respondent.

GREEN J.—Defendant appeals from a conviction of burglary, RCW 9.19.020, while in possession of a firearm, RCW 9.41.025.

Error is assigned to (1) the denial of the motion to dismiss based on violation of CrR 3.3, and (2) the failure to suppress an admission and evidence obtained in violation of *Miranda* warnings.

On July 30, 1975, at approximately 3:30 a.m., a witness saw two men enter the back door of Bunn's Store in

Wishram, Washington. After calling the Sheriff's Department of Klickitat County, the witness and a neighbor armed and positioned themselves behind the store. When someone emerged from the back of the store, the witness shouted a warning that there were four guns on the building and that anyone inside should come out. Louis Markovich and Gregory Leetz[1] came out of the back of the store with their hands over their heads, both unarmed. The neighbor fired a shotgun blast over his head to assure that the two men would not run. Deputies Littlejohn and Tiffany arrived at the store at 3:55 a.m. Deputy Littlejohn frisked defendant who was unarmed, wearing a shoulder holster and denied having a weapon. He was then handcuffed and turned over to Deputy Tiffany while Deputy Littlejohn went into the store to investigate. Deputy Tiffany also frisked defendant and questioned him about the shoulder holster. Defendant replied he was unarmed and that the holster was for a two–way radio. At that point, Deputy Tiffany pushed defendant's head against the hood of the patrol car and warned him that "if he didn't tell me where the weapon was, that he would be in serious trouble." Deputy Tiffany placed defendant inside the patrol car and went to the store. A few minutes later, Deputy Tiffany was informed by one of the witnesses that defendant desired to speak to him. The deputy returned to the car and defendant told him that he had been carrying a gun which was discarded after leaving the store.

In searching the store, the deputies found a green bag filled with money, a portable radio, a leather satchel containing tools, and a safe which had been pried open. Both deputies testified that after the search of the alcove outside the rear of the store, a gun was found under a pile of leaves. A second gun was found in the same area during a later search prompted by defendant's statement to Deputy

---

[1]Defendant Leetz was granted a continuance and the cases were severed.

Tiffany. Defendant had not been advised of his constitutional rights or given *Miranda* warnings prior to his statement to Deputy Tiffany. In fact, no constitutional warnings were given until several hours later at the sheriff's office.

Defendant moved to suppress his admission and the second gun, based on the failure of the police to advise him of his constitutional rights. After the suppression hearing, the trial court denied the motion by oral opinion.

Defendant's trial was set for October 28, the 90th day after his preliminary appearance. On October 27, defense counsel requested a rehearing on the motion to suppress to clarify the court's decision. Upon rehearing, the trial court stated that in ruling on the motion to suppress he had inadvertently cited the wrong case, and advised that he would do additional research and that opportunity for further argument on the suppression motion would be held prior to trial on October 28. After further argument, the trial court refused to disturb its previous denial of the motion to suppress, and written findings and conclusions as required by CrR 3.5(c) were requested by defense counsel. These were prepared and signed on October 28. The remainder of that day was taken up by conferences in chambers and extensive pretrial negotiations.

Around 5 p.m. on October 28, the court afforded defense counsel and the prosecuting attorney the opportunity to begin picking the jury. Defense counsel stated that they had to travel to Yakima because of lack of local accommodations and "that in the morning we had left Yakima approximately at 7 o'clock, and we arrived here in time, that it would cause a great hardship particularly in view of the fact that we would have had a hardship in the last minute preparation." The trial court dismissed the jury around 5 o'clock, and after further conference with counsel, adjourned for the day.

The next morning defense counsel moved to dismiss for violation of the 90–day rule of CrR 3.3. The court denied the motion, stating that the jury was not impaneled on

October 28 so that additional pretrial matters could be disposed of and negotiations between the defense and the prosecution could be completed.

■ First, defendant contends that the 90–day rule of CrR 3.3 compels a dismissal with prejudice. We disagree. CrR 3.3(e)(3) provides that delays may be granted on the court's own motion when required in the due administration of justice and where the defendant will not be substantially prejudiced in the presentation of his defense. When the trial court exercises its discretion under this rule, it must occur within the time limits of CrR 3.3 and it must make a record of its acts and reasons to afford appellate review. *State v. Jack,* 87 Wn.2d 467, 553 P.2d 1347 (1976). Here, the trial court acted timely and set forth the reasons for the delay, *i.e.,* pretrial arguments, rearguments, and necessary conferences and negotiations. We find the delay was justified under CrR 3.3(e)(3) and hence not error.

Second, defendant contends that his statement to Deputy Tiffany admitting a possession of a weapon is inadmissible. We agree.

It is undisputed that defendant was in custody without having been advised of his constitutional rights when he made the incriminating statement. The trial court determined that the statement was admissible because it was spontaneous, not the result of interrogation, and within the officers' safety exception of *State v. Lane,* 77 Wn.2d 860, 467 P.2d 304 (1970). We disagree.

In *State v. Toliver,* 6 Wn. App. 531, 534, 494 P.2d 514 (1972), the court said:

> Statements which are freely given are voluntary. If they are likewise spontaneous, unsolicited and not the product of custodial interrogation, they are not coerced within the concept of *Miranda.*

Custodial interrogation means

> questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Miranda v. Arizona,* 384 U.S. 436; 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The justifiable exception for the officers' safety allows:

> [P]olice to ask questions which are strictly limited to protecting the immediate physical safety of the police themselves and which could not reasonably be delayed until after warnings are given.

*State v. Lane, supra* at 863.

■ We find that the initial questioning by Deputy Littlejohn as to whether the defendant had a gun, which was made promptly after arrest, pat–down, and discovery of an empty shoulder holster, was proper under the exception of *State v. Lane, supra.* However, the second questioning by Deputy Tiffany is clearly custodial interrogation, not spontaneous, and not within the exception of *State v. Lane, supra.* After defendant was turned over to Deputy Tiffany, there was no concern for the officer's physical safety; defendant was handcuffed, under control, and had been searched twice. Deputy Tiffany's statement to defendant in the form of a threat was designed to elicit incriminating information. *Orozco v. Texas,* 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095 (1969). Therefore, the admission by defendant made prior to *Miranda* warnings is inadmissible and should have been suppressed.

Last, defendant contends that the second gun is inadmissible under the "fruits of the poisonous tree" doctrine. We agree.

■ The undisputed findings of fact entered following the suppression hearing reveal that before defendant made the incriminating statement, the deputies had searched the store and the alcove finding one weapon. After defendant's admission, a second search was conducted and a second weapon discovered. Defendant's statement that he was carrying a gun was obtained in violation of his constitutional rights, and discovery of the second gun was based on this statement. Therefore, it is inadmissible under the exclusionary rule of *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), and *State v. Byers,* 88

Wn.2d 1, 559 P.2d 1334 (1977). In *Byers,* the court determined that but for an illegal arrest, a confession and physical evidence could not have been obtained. The court held that the confession and evidence would be admissible only if obtained by sufficiently distinguishable means so as to be purged of the primary taint rather than exploitation of the illegality. *See also McNear v. Rhay,* 65 Wn.2d 530, 398 P.2d 732 (1965). Here, we determine that the discovery of the second gun is directly related to the violation of defendant's constitutional rights and is therefore inadmissible.

█ The defendant contends that the erroneous admission of the statement and the second gun entitles him to a new trial. We disagree. Since the possession of a weapon is not an element of the underlying burglary charge and in view of the overwhelming evidence of defendant's guilt on the charge, the erroneous admission of the statement and second gun constitute at most harmless error. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). However, this evidence directly affects the special verdict finding defendant in possession of a firearm at the time of the offense. Based upon this special verdict, the court was required to impose a mandatory minimum sentence of 5 years under RCW 9.41.025. This statute has been construed to require an additional penalty rather than to create a separate offense. *State v. Boyer,* 4 Wn. App. 73, 78, 480 P.2d 257 (1971); *State v. Rose,* 7 Wn. App. 176, 498 P.2d 897 (1972), *cert. denied,* 414 U.S. 835, 38 L. Ed. 2d 70, 94 S. Ct. 177 (1973). Thus, the erroneous admission of evidence operates to nullify the special verdict and releases the trial judge of the requirement of imposing a mandatory minimum sentence, but does not require a new trial because only the penalty is affected. For that reason, this case must be remanded for resentencing free of the requirements of RCW 9.41.025.[2]

---

[2]In the circumstances of this case, *State v. Willis,* 5 Wn. App. 441, 487 P.2d 648 (1971), does not apply, the State's argument notwithstanding, because the special verdict rests in whole or in part upon the erroneously admitted evidence.

We affirm the conviction of burglary and remand for resentencing in accordance with this opinion.

MUNSON, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied July 11, 1977.

Review denied by Supreme Court February 3, 1978.