[No. 49323–5.   En Banc.   October 6, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. VERNELL TEYNAC HENNINGS, *Respondent.*

*Norm Maleng, Prosecuting Attorney, Lee D. Yates, Senior Deputy, John G. Fritts, Special Deputy,* and *Stephen Moore, Deputy,* for appellant.

*Elizabeth K. Selleck* of *Washington Appellate Defender Association,* for respondent.

BRACHTENBACH, J.—This case presents the issue whether the State may appeal a trial court dismissal of a habitual criminal charge when the dismissal is based upon insufficient evidence. Respondent argues that the double jeopardy clause prohibits the State from attempting again to prove that charge. We hold that the double jeopardy clause bars a second habitual criminal proceeding where the State initially fails to prove beyond a reasonable doubt the validity of each conviction necessary to establish habitual criminal status.

On October 1, 1981, the court, on the basis of stipulated facts, found Vernell Teynac Hennings guilty of five counts of robbery in the first degree while armed with a deadly weapon and one count of second degree robbery. The State subsequently filed a supplemental information charging Hennings with being a habitual criminal under RCW 9.92-.090. That charge was based upon two prior King County proceedings. On March 8, 1974, Hennings pleaded guilty to robbery. On January 7, 1977, Hennings stipulated to facts

sufficient to support a conviction for first degree robbery, while armed with a deadly weapon. On appeal, only the validity of the 1974 guilty plea is challenged; the 1977 and 1981 convictions are not contested.

The 1974 guilty plea resulted from a December 14, 1973 armed robbery of the Mission Pharmacy. Hennings originally was charged with robbery while armed with a firearm, but an amended information deleted the firearms allegation. Hennings' "Statement of Defendant on Plea of Guilty" includes the statement: "I held up the Mission Pharmacy and took money out of the cash register." Clerk's Papers, at 37. The plea statement also set out the maximum sentence of 20 years to life and enumerated several rights of the defendant, but did not include any reference to Hennings' privilege against self–incrimination.

At the habitual criminal hearing, the only other significant evidence before the judge was the testimony of Mr. Covell, Hennings' attorney in the 1974 case. Covell testified that he had no independent recollection of either Hennings personally or representing him in the 1974 case. The transcript does, however, contain the following statement by Covell:

I've gone over [the guilty plea] form with Mr. Hennings, and I believe he fully understands all the matters included therein, and his change of plea on the basis of the indicated dismissals of the special findings is voluntarily and knowingly made.

Exhibit 11, at 2. He also testified that he would not have made this statement if it was not true. Moreover, Covell testified that it was his ordinary practice to advise his clients of the rights they were giving up before entering a guilty plea, and to review the guilty plea statements with his clients. Again, there was no mention of the privilege against self–incrimination, or even which of defendant's rights Covell usually discussed.

The court concluded the 1974 guilty plea was not knowingly and voluntarily entered because Hennings did not understand that by entering the plea he waived: the right

against self–incrimination, the right to trial by jury, the right to confront and examine adverse witnesses, the right to call witnesses on his own behalf at no expense, the right to require that the State prove the charge beyond a reasonable doubt, and the right of appeal. The judge also concluded there was an insufficient factual basis for the entry of the plea. Therefore, he dismissed the habitual criminal charge.

A habitual criminal proceeding under RCW 9.92.090 involves several significant characteristics relevant to double jeopardy analysis. First, an action to determine the status of habitual offender is a separate, supplemental proceeding. *State v. Kirkpatrick*, 181 Wash. 313, 315–16, 43 P.2d 44 (1935). Second, the State has the burden of proving beyond a reasonable doubt several facts. One is the existence of two prior valid felony convictions along with the present conviction. *State v. Kelly*, 52 Wn.2d 676, 328 P.2d 362 (1958). In addition, if, as in this case, any of the convictions were based on guilty pleas and the defendant challenges the validity of the plea, the State must also prove beyond a reasonable doubt that the challenged plea was knowingly made after the defendant was informed of the nature of the offense and the consequences of pleading guilty. *State v. Holsworth*, 93 Wn.2d 148, 161, 607 P.2d 845 (1980). Finally, the second paragraph of RCW 9.92.090 limits the penalty to life imprisonment; although the sentence may be suspended, there is no discretion to impose a reduced sentence. The question is whether this type of proceeding invokes the protections of the double jeopardy clause.

The double jeopardy clause of the Fifth Amendment plainly provides that: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . .". U.S. Const. amend. 5. That apparent clarity, however, has not resulted in equally clear precedent. Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81, 82–86 (1979). The United States Supreme Court even admits that its decisions in this area

"can hardly be characterized as models of consistency and clarity." *Burks v. United States,* 437 U.S. 1, 9, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). Because of this confusion, it is necessary to consider the interests protected by the double jeopardy clause in order to determine whether it should apply to the circumstances of a given case.

■ The double jeopardy clause clearly prohibits the retrial of a defendant who has been acquitted of a crime charged. *United States v. DiFrancesco,* 449 U.S. 117, 129–30, 66 L. Ed. 2d 328, 101 S. Ct. 426 (1980).

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 2 L. Ed. 2d 199, 78 S. Ct. 221, 6 A.L.R.2d 1119 (1957). The *Burks* Court characterized this same interest:

> The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.

*Burks,* at 11. In general, the double jeopardy clause may implicate one or more of the following distinct values:

> (1) the integrity of jury verdicts of not guilty, (2) the lawful administration of prescribed sentences, and (3) the interest in repose.

Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich. L. Rev. 1001, 1002 (1980).

Among the three values, the Court is most protective of the first because acquittals based upon insufficient evidence indicate that the State has failed to carry its burden. *Burks,* at 16. *Cf. Tibbs v. Florida,* 457 U.S. 31, 72 L. Ed. 2d 652, 102 S. Ct. 2211, 2217–18 (1982) (reversal because of

weight of evidence, rather than insufficiency, does not preclude retrial on double jeopardy principles). Although some argue that this protection represents a special deference to jury conclusions, the Supreme Court has not made such a distinction.

> A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial.

*Tibbs,* at 41. Prior to the *Burks* decision, the courts did not extend double jeopardy analysis to cases in which the defendant obtained a reversal of his conviction on appeal. *See, e.g., Bryan v. United States,* 338 U.S. 552, 94 L. Ed. 335, 70 S. Ct. 317 (1950). In *Burks,* however, the Court found that a reversal on appeal based upon insufficiency of the evidence is tantamount to an acquittal, which bars retrial. *Burks,* at 16. Thus, at least in terms of failure to prove a crime the double jeopardy clause prohibits the State from making successive attempts to convict an individual.

The Court has been more reluctant to extend double jeopardy principles to sentencing proceedings. That reluctance was reflected in the Court's conclusion that defendants who obtained a new trial for any reason could be retried and a harsher sentence could be imposed because the original conviction was nullified and "the slate wiped clean." *North Carolina v. Pearce,* 395 U.S. 711, 721, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). That rule, however, was recently modified by the Court in *Bullington v. Missouri,* 451 U.S. 430, 443, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981).

> Thus, the "clean slate" rationale recognized in *Pearce* is inapplicable whenever a jury agrees or an appellate court decides that the prosecution has not proved its case.

*Bullington,* at 443. This modification reiterates the importance of double jeopardy interests where the State fails to prove its case. Along with *United States v. DiFrancesco, supra,* the *Bullington* opinion now controls the analysis of double jeopardy principles in bifurcated sentencing pro-

ceedings.

*Bullington v. Missouri, supra,* involved a death penalty statute which required the prosecution to prove certain aggravating circumstances beyond a reasonable doubt in a separate penalty phase of trial. The statute also required a unanimous vote in order to impose the death penalty, which was not mandatory even if the aggravating circumstances were proved. The only alternative penalty, however, was life imprisonment with no possibility of parole for 50 years, which was also the mandatory penalty if the State failed to prove sufficient aggravating circumstances. In Bullington's case, the jury did not impose the death penalty. After he obtained a new trial on the grounds that women had been automatically exempted from jury service, *Duren v. Missouri,* 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664 (1979), the State notified him that it was again going to seek the death penalty. The lower courts, relying on *Pearce,* held that the double jeopardy clause did not prevent the State from seeking the harsher penalty upon retrial.

The United States Supreme Court relied on four features of the Missouri procedure to distinguish its previous decisions: the separate nature of the sentencing proceeding; the fact that specific aggravating circumstances had to be proved; the "beyond a reasonable doubt" proof standard; and the limited discretion given the jury. *Bullington,* at 438. The Court described these features of the sentencing procedure as "the hallmarks of the trial on guilt or innocence." *Bullington,* at 439. The Court reasoned that in its prior cases, involving discretionary and essentially standardless sentencing statutes, it was not possible to determine whether the prosecution had failed to meet any burden of proof it may have had. *Bullington,* at 443–44. The Court also noted that by imposing the "beyond a reasonable doubt" proof requirement, the Legislature or courts had recognized that the risk of error was great. *Bullington,* at 441.

On this latter basis, the *Bullington* Court distinguished *United States v. DiFrancesco, supra,* which involved the

federal "dangerous special offender" sentencing statute. That statute is similar to the habitual criminal statute involved here in that both permit enhancement of a sentence upon proof of certain prior acts. Unlike Washington's habitual criminal procedure and the Missouri procedure at issue in *Bullington,* however, the federal statute required proof only by a preponderance of the evidence, and the Court retained broad discretion in setting the sentence. 18 U.S.C. § 3575 (1970). Also, the procedure in *DiFrancesco* included the right to appellate review of sentences "'on the record of the sentencing court". *Bullington,* at 440. The appellate court could modify the sentence itself, rather than remanding for a second proceeding in which the State would have an opportunity to convince another fact finder of facts necessary to impose a particular sentence. *Bullington,* at 440. Finally, *DiFrancesco* itself involved only an appeal by the State of the court's exercise of its sentencing discretion, not an appeal of adverse factual findings.

Respondent argues that Washington's habitual criminal procedure is more similar to Missouri's death penalty procedure than to the federal "dangerous special offender" procedure. In habitual criminal proceedings, the State must prove the facts necessary to establish the habitual criminal status beyond a reasonable doubt. *State v. Murdock,* 91 Wn.2d 336, 588 P.2d 1143 (1979). Also, RCW 9.92.090 specifies the facts that must be proven to establish that status. Once that status is proven, the statute specifies a particular sentence that "shall" be imposed. The trial court, however, may suspend that sentence. *State v. Gibson,* 16 Wn. App. 119, 126, 553 P.2d 131 (1976). The trial court's discretion to choose between life imprisonment and life probation for a habitual criminal is very similar to the jury's option under the *Bullington* statute to choose between life and death. Although *Bullington* involved the death penalty sentencing provision, neither the reasoning nor the holding in that case depends upon the presence of the death penalty.

A comparison of the *DiFrancesco* and *Bullington*

opinions indicates that Washington's habitual criminal proceedings are more like those analyzed in *Bullington*. Although each Supreme Court decision concerned bifurcated sentencing proceedings, both Washington's procedure and Missouri's involve a beyond a reasonable doubt standard of proof, rather than the preponderance standard used in *DiFrancesco*. Also, the federal judge in *DiFrancesco* retained broad discretion in sentencing, 18 U.S.C. § 3575 (1970), whereas the Missouri and Washington tribunals are limited to two distinct choices in sentencing. These similarities indicate that under *Bullington* double jeopardy principles should apply to Washington's habitual criminal proceedings.

There is additional support for extending *Bullington* to state habitual criminal proceedings in a recent Fifth Circuit decision construing Texas statutes. *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.), *cert. granted,* 457 U.S. 1116, 73 L. Ed. 2d 1328, 102 S. Ct. 2927 (1982).[1] In *Bullard* the defendant filed a habeas corpus petition challenging a state court conviction on a habitual criminal charge. Under Texas statutes, the State must prove in a separate trial that the defendant committed the prior felony offenses. *Bullard,* at 1357. Also, the two prior convictions must be alleged in the indictment, the allegations are treated as substantive elements of the offense, and the State must establish those elements beyond a reasonable doubt. *Bullard,* at 1358.

---

[1]The procedural path of this case is somewhat more complicated than the citation indicates. After the Fifth Circuit decided *Bullard,* the Texas Court of Criminal Appeals reexamined its prior holdings and agreed that failure of proof of prior convictions in an enhancement proceeding creates a double jeopardy bar as a matter of federal law, *Cooper v. State,* 631 S.W.2d 508 (Tex. Crim. App. 1982) (en banc), specifically overruling its decision in *Bullard v. State,* 533 S.W.2d 812 (Tex. Crim. App. 1976).

The United States Supreme Court subsequently vacated and remanded the *Bullard* case to the Fifth Circuit, to consider whether the Texas constitution offers respondent relief on grounds independent of the United States Constitution, so as to render inappropriate the decision on federal grounds. *Bullard v. Estelle,* ___ U.S. ___, 74 L. Ed. 2d 987, 103 S. Ct. 776 (1983). There is no indication that the Court disagreed with the application of *Bullington* to habitual criminal proceedings.

The Fifth Circuit held that under these requirements,

> the double jeopardy clause bars a second enhancement proceeding when the evidence at the first enhancement proceeding was insufficient to establish that the defendant committed one or more of the prior offenses necessary for enhancement . . .

*Bullard,* at 1349. The court concluded that *Bullington* applied to habitual criminal proceedings because of the similarity in procedures, *i.e.,* a separate proceeding, a requirement of proof of additional facts beyond a reasonable doubt, explicit standards to guide the jury, and a choice of only two alternative sentences. *Bullard,* at 1360. The court relied on *Burks v. United States,* 437 U.S. 1, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978) for the proposition that

> a trial verdict or an appellate ruling on insufficiency of the evidence implicates the interest of the defendant in maintaining the integrity of the acquittal and calls for the utmost protection of the double jeopardy clause.

(Footnote omitted.) *Bullard,* at 1355.

After the *Bullard* decision, the Texas courts adopted a similar analysis in regard to their habitual criminal proceedings. *Cooper v. State,* 631 S.W.2d 508 (Tex. Crim. App. 1982). The Texas court found that the State had failed to prove which crime resulted in a 1968 conviction they were attempting to use to establish the habitual criminal charge. *Cooper,* at 512. The court noted that its old rule allowed remand for a new trial in which the State had another "attempt to meet its burden of proof as to the enhancements in the punishment portion of the trial." *Cooper,* at 512–13 (citing *Porier v. State,* 591 S.W.2d 482 (Tex. Crim. App. 1979)). The court, however, overruled *Porier* and reasoned that *Bullard* and *Bullington* preclude successive attempts by the State to satisfy its burden of proof. *Cooper,* at 513. In particular:

> To allow the State to attempt at a *new* hearing to produce the proof that it could not produce at the initial hearing is to again subject the defendant to jeopardy. *Bullington* tells us that the Double Jeopardy Clause can apply to punishments when the punishment depends on

whether the State has proved or failed to prove specific punishment allegations. When the punishment does depend on such allegations and the State fails to prove them initially, the State may not attempt to make the defendant endure a relitigation of the issue.

*Cooper,* at 513.

Against these cases, this court must reconsider the validity of *State v. Braithwaite,* 92 Wn.2d 624, 600 P.2d 1260 (1979), where this court held that: "habitual criminal proceedings do not place a defendant in jeopardy." *Braithwaite,* at 626. In *Braithwaite,* the defendant was originally found not to be a habitual criminal. The Court of Appeals reversed and remanded. This court affirmed, rejected Braithwaite's contention that the double jeopardy clause barred relitigation of the habitual criminal charge. The majority relied on numerous cases in which this court held that because "habitual criminal" is a *status* rather than a *crime,* the double jeopardy clause is inapplicable. *See, e.g., State v. Gilcrist,* 91 Wn.2d 603, 590 P.2d 809 (1979). For several reasons, the *Braithwaite* standard does not appear valid in light of *Bullington* and *Bullard.* The *Bullington* Court applied the double jeopardy clause to a sentencing procedure rather than a criminal trial which seems to eliminate the status distinction. By focusing on the nature of the proceeding, both the Supreme Court and the Fifth Circuit emphasize that it is not the labels placed upon those proceedings that is important, but the opportunity the State had to present its evidence against the defendant. Like Texas, Washington's prior convictions in a habitual criminal proceeding must be alleged in the information and are treated as substantive elements. *State v. Murdock,* 91 Wn.2d 336, 340–41, 588 P.2d 1143 (1979). Those elements are presented at a separate proceeding, and the State must prove the elements beyond a reasonable doubt. *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980).

In reaching our decision, several factors compel the conclusion that double jeopardy analysis applies to Washington's habitual criminal proceedings. First, the Supreme

Court has recently determined that bifurcated sentencing proceedings may implicate double jeopardy interests. *Bullington v. Missouri,* 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981). Second, at the habitual criminal hearing the State must prove, beyond a reasonable doubt, the existence of the prior valid felony convictions. *State v. Holsworth, supra.* Third, the court's sentencing discretion is limited to such an extent that the failure to impose the greater sentence establishes that the State failed to meet its burden of proof to justify that sentence. *Bullington v. Missouri, supra.* Therefore, the defendant is protected by the double jeopardy clause from successive attempts by the State to establish sufficient proof. *Burks v. United States, supra.* To the extent that *State v. Braithwaite, supra,* is inconsistent with this analysis, it is overruled.

Accordingly, we hold that if the State fails to produce sufficient evidence to establish habitual criminal status, then the double jeopardy clause prohibits a second hearing to produce additional evidence.[2]

WILLIAMS, C.J., and STAFFORD, UTTER, DOLLIVER, DORE, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—While I agree with the analysis of the majority that the double jeopardy clause bars a second habitual criminal proceeding where the dismissal of the charge is based on insufficient evidence, I would hold that the State presented sufficient evidence to support the habitual criminal charge.

I would so hold on the ground that a defendant in a habitual criminal proceeding should bear the burden of proof in challenging the validity of a guilty plea underlying a prior conviction, where such conviction was entered prior

---

[2]This decision does not mean, however, that if Mr. Hennings is subsequently convicted of another felony the State would be precluded from filing another habitual criminal information. It means that in a subsequent hearing the State would be precluded from relying on the invalid 1974 conviction to support such a charge.

to 1976, and overrule *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980) insofar as it placed the burden upon the State to prove the validity of pre–1976 guilty pleas.

The law concerning habitual criminal proceedings prior to our decision in *Holsworth* was to the effect that prior convictions in a habitual criminal proceedings are proved by introducing copies of the original judgment and sentence bearing the seal of the judge who heard the case, annexed to the original attestation by the officer in charge, and that the prosecutor's burden is to prove that a defendant was duly convicted in a court of competent jurisdiction, presided over by a qualified judge. *State v. Murdock,* 91 Wn.2d 336, 588 P.2d 1143 (1979). *See also State v. Williams,* 98 Wn.2d 428, 432, 656 P.2d 477 (1982).

In *Holsworth* we held that once a defendant in a habitual criminal proceeding challenges the validity of a former guilty plea relied upon by the State to prove his habitual criminal status, the State has the burden of proving beyond a reasonable doubt that, prior to entering the guilty plea, the defendant has been apprised of the nature of the offense and the consequences of his plea. Extrinsic evidence regarding the voluntariness of the guilty plea may be considered for any guilty plea entered before September 1976, the date of *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976). *Wood* held that after 1976, the record of the plea hearing must show on its face that the plea was entered voluntarily and intelligently.

The *Holsworth* holding was based largely on what we considered necessary to comply with the mandate of *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). *Boykin* established the rule that a pleading defendant must be apprised of the nature of the offense and the consequences of pleading guilty in order for the plea to be accepted as knowing, intelligent, and voluntary. *Boykin,* at 243–44.

Although *Boykin* has not generally been applied retroactively, *Holsworth* applied *Boykin* retroactively to the extent that a defendant in a habitual criminal proceeding is enti-

tled to challenge the validity of a pre–*Boykin* guilty plea. *Holsworth* further held that the State has the burden of proof beyond a reasonable doubt that the pre–*Boykin* guilty pleas were made knowingly after the defendant was apprised of the nature of the offense and of the consequences of his plea.

> Thus, our decision in *Holsworth,* while it relied upon some established principles concerning the guilty pleas, effected an abrupt change in the law with respect to procedures in habitual criminal proceedings. The burden upon the prosecutor was significantly increased as a result of that opinion. Also, prior to that decision, attacks on judgments offered in evidence in such proceedings reasonably could have been regarded as collateral attacks, wherein the party attacking must overcome the presumption of validity which ordinarily attaches to judgments. *See Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). It is evident that the lower courts, as well as prosecutors, have understandably relied upon that presumption of validity.

(Footnote omitted.) *State v. Williams, supra* at 432–33.

The burden is on the State to prove each element of a habitual criminal status beyond a reasonable doubt. *State v. Murdock, supra* at 340–41. To establish status as habitual criminal, the elements the State must prove are (1) prior judgments of conviction and (2) that person named therein is the same person on trial. *State v. Kelly,* 52 Wn.2d 676, 328 P.2d 362 (1958); *State v. Harkness,* 1 Wn.2d 530, 96 P.2d 460 (1939). Accordingly, the State has met its burden of proof when it proves beyond a reasonable doubt a prior judgment of conviction and that the person named therein is the same person on trial. Introduction of copies of the original judgment and sentence hearing, the seal of the judge who heard the case, annexed to the original attestation by the officer in charge satisfies this burden of proof. *Murdock,* at 341. The judgment is then entitled to a presumption of validity. *See Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). An attack on a guilty plea that underlies the judgment of

conviction is in the nature of a collateral attack on the judgment. A collateral attack is an attempt to impeach the judgment by matters dehors the record, in an action other than that in which it was rendered, and is an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking the judgment. *Philbrick v. Parr,* 47 Wn.2d 505, 509, 288 P.2d 246 (1955). Not until our 1976 decision in *Wood* did we require the record to show on its face that the plea was entered knowingly and intelligently.

There is no constitutional requirement that the State prove the validity of a guilty plea underlying a prior conviction. To require such is to transform the habitual criminal proceeding into a trial–within–a–trial. *Holsworth* could rationally be extended to require the State to demonstrate the constitutional validity of outstanding convictions by proof beyond a reasonable doubt when the defendant challenges *any* alleged unconstitutional error underlying the conviction. *See State v. Serr,* 35 Wn. App. 5, 664 P.2d 1301 (1983).

I would hold that once the State has proved the conviction under the guidelines set forth in *Murdock,* there is a presumption of validity of any underlying guilty plea entered prior to 1976. A defendant's challenge to a pre–1976 plea of guilty should be viewed as a collateral attack on the judgment. The defendant carries the burden of proving that the pre–1976 conviction was obtained in violation of *Boykin.* Similar holdings are found in *State v. Holden,* 375 So. 2d 1372 (La. 1979); *Williams v. State,* ___ Ind. ___, 431 N.E.2d 793 (1982); *State v. Adamson,* 197 Kan. 486, 419 P.2d 860 (1966).

In the subject case the State met its burden of proof when it proved beyond a reasonable doubt the prior 1974 judgment conviction for robbery and that Hennings was the person convicted of such robbery. Defendant Hennings did not meet his burden of proof in his collateral attack on the 1974 judgment. In addition, there is no allegation that he

was actually prejudiced by any error as required in *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). In fact, he was not, as he got the special firearms charge deleted which would have subjected him to an additional mandatory 5–year minimum sentence.

In addition, I would hold that a defendant in a habitual criminal proceeding is prohibited from challenging the validity of a prior conviction based on a guilty plea, where such plea was entered pursuant to a plea bargain resulting in some benefit to the defendant.

The challenged 1974 guilty plea resulted from a December 14, 1973, armed robbery of the Mission Pharmacy. Hennings originally was charged with robbery while armed with a firearm, but due to a plea bargain arrangement in exchange for the guilty plea an amended information deleted the firearms allegation. Because of the deletion of the special firearms charge, Hennings avoided a mandatory 5–year minimum sentence. RCW 9.41.025.

In *State v. Majors,* 94 Wn.2d 354, 356–57, 616 P.2d 1237 (1980), this court noted that a guilty plea entered pursuant to a negotiated plea agreement presents a different situation from the rule that a guilty plea does not preclude a defendant from raising questions concerning the circumstances in which a plea was made.

Plea bargaining is a procedural device in which the prosecution promises to dismiss other pending charges, or to make charge reductions, or to make certain recommendations in exchange for the defendant's promise to plead guilty. The plea bargain generally insures the prosecutor a conviction and enables the defendant to obtain a lighter sentence. *See generally* Alschuler, *The Prosecutor's Role in Plea Bargaining,* 36 U. Chi. L. Rev. 50 (1968); Bishop, *Rights and Responsibilities of the Defendant Pleading Guilty,* 49 J. Urb. L. 1 (1971); Tarnow, *Criminal Law and Procedure,* 19 Wayne L. Rev. 437 (1973); Comment, *Profile of a Guilty Plea: A Proposed Trial Court Procedure for Accepting Guilty Pleas,* 17 Wayne L. Rev. 1195 (1971); Note, *Guilty Plea Bargaining: Compromise by Prosecutors*

*to Secure Guilty Pleas,* 112 U. Pa. L. Rev. 865 (1964). When the defendant agrees to a plea bargain in exchange for a reduced charge or lighter sentence, he waives enumerated rights, including trial by jury, confrontation of witnesses, self–incrimination, appeal, and proof beyond a reasonable doubt of all elements of the crime charged. *See generally Majors,* at 356–57.

In *Bordenkircher v. Hayes,* 434 U.S. 357, 363–64, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978), the United States Supreme Court observed:

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self–condemnation. *Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process.* By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.
>
> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"— and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin* v. *Stynchcombe,* [412 U.S. 17, 31, 36 L. Ed. 2d 714, 93 S. Ct. 1977 (1973)]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

(Citations omitted. Italics mine.)

*Hayes* serves as strong support for prohibiting a habitual criminal defendant from challenging a prior guilty plea

entered pursuant to plea bargaining. The basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary and without understanding of the consequences in a constitutional sense.

We should not permit a defendant to obtain the benefits of a plea bargaining agreement and then subsequently challenge such agreement and obtain the benefit of avoiding habitual criminal status.

DIMMICK, J., concurs with ROSELLINI, J.