298

[No. 48963-1-I.   Division One.   April 22, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. H.J., *Appellant*.

*Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Margaret E. Campbell, Deputy,* for respondent.

ELLINGTON, J. — H.J. was adjudicated guilty of first degree trespass with sexual motivation. The trial court imposed a disposition with a significant treatment requirement, believing it was within the standard range. The State realized it was not, and sought redisposition. The trial court then imposed the same disposition pursuant to a manifest injustice determination. This procedure did not violate double jeopardy, and we affirm.

## FACTS

When Agnes Cieslik returned to her apartment in Bellevue, she heard a noise coming from her bedroom. She saw a pair of feet protruding from under the bed, and ordered the person to come out. A young man emerged with his shirt pulled up over his head. When he removed the shirt, Cieslik recognized him as H.J., who lived in the apartment above hers. H.J. fled the apartment through a living room window. Police discovered that personal items had been removed from Cieslik's dresser and placed on her bed, and a tube of lubricant had been removed from her medicine cabinet and placed on her bathroom sink.

H.J. was found guilty of first degree trespass with sexual motivation. The standard range for the offense was local sanctions, including 0 to 30 days detention, 0 to 12 months community supervision, 0 to 150 hours community service, and a fine of up to $500.[1] The report submitted by the juvenile probation counselor included an evaluation recommending three years of intensive sex offender treatment. Both the prosecutor and probation counselor recommended a manifest injustice disposition of 52 weeks in custody of the Juvenile Rehabilitation Administration (JRA).

The court and the parties apparently thought H.J.'s crime was classified as a sex crime, such that the standard range included a term of community supervision of up to 24 months. The court declined to adopt the manifest injustice recommendation, believing that H.J. would receive a low priority on the waiting list for sex offender treatment at JRA, with no opportunity to supervise him afterward, whereas 24 months of supervision would meet both H.J.'s need for rehabilitation and the community's need for protection. The court therefore imposed 24 months of community supervision and sex offender treatment.

Less than a month later, the State moved to correct the disposition on the ground that first degree trespass with

[1] RCW 13.40.0357.

sexual motivation is not classified as a sex crime, and the court therefore lacked authority to impose 24 months of community supervision. The State requested a manifest injustice disposition. The court concluded the State was correct regarding the maximum supervision allowed under the standard range, and found that the 12 months community supervision available under the standard range was insufficient to meet H.J.'s treatment needs, that H.J. was a danger to the community without treatment, and that a disposition within the standard range would therefore be a manifest injustice. The court rejected H.J.'s double jeopardy argument, and imposed a manifest injustice disposition of 24 months of community supervision and treatment.

H.J. does not contend the manifest injustice disposition is unsupported by the evidence. Rather, he argues it violated the double jeopardy clause.

## DISCUSSION

■ The double jeopardy clause of the Fifth Amendment protects against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments for the same offense.[2] The double jeopardy clause of the Washington Constitution, article I, section 9, is given the same interpretation as the Fifth Amendment's double jeopardy clause.[3]

■ Generally, double jeopardy protections do not apply to sentencing proceedings because entry of a sentence does not create the constitutional finality that attends acquittal.[4] Thus, the double jeopardy clause does not prevent the

[2] *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 726, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)).

[3] *Gocken*, 127 Wn.2d at 107.

[4] *Monge v. California*, 524 U.S. 721, 728, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998); *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980); *State v. Hardesty*, 129 Wn.2d 303, 310, 915 P.2d 1080 (1996).

government from appealing a sentence when statutorily permitted, nor restrict the length of a sentence imposed after retrial following a defendant's successful appeal.[5]

The double jeopardy clause does bar resentencing where the original sentencing proceeding was more like a trial than an ordinary sentencing proceeding.[6] The death penalty proceedings in *Bullington v. Missouri* had "the hallmarks of [a] trial" for double jeopardy purposes.[7] The Supreme Court identified four features that made the proceeding more like a trial than an ordinary sentencing: (1) the separate nature of the sentencing proceeding; (2) the fact that specific aggravating circumstances had to be proved; (3) the beyond a reasonable doubt standard of proof; and (4) the limited discretion given the jury.[8]

Similarly, in *State v. Hennings*,[9] our Supreme Court held that a proceeding under the former habitual criminal statute, RCW 9.92.090 (1909), was more like a trial than an ordinary sentencing proceeding. The court compared the habitual criminal proceeding to the death penalty proceeding in *Bullington*, observing that the standard of proof for both procedures was beyond a reasonable doubt, and that the tribunals in both procedures were limited to two distinct choices in sentencing: in Missouri, the jury could select either death or life imprisonment; in Washington, the court could select either life imprisonment or life probation.[10] On this basis, the court held that "double jeopardy principles should apply to Washington's habitual criminal proceedings."[11]

---

[5] *Monge*, 524 U.S. at 730; *DiFrancesco*, 449 U.S. at 135.

[6] *Hardesty*, 129 Wn.2d at 310-11; *Bullington v. Missouri*, 451 U.S. 430, 438, 446, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981).

[7] *Bullington v. Missouri*, 451 U.S. 430, 439, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981).

[8] *Bullington*, 451 U.S. at 438.

[9] 100 Wn.2d 379, 670 P.2d 256 (1983).

[10] *Hennings*, 100 Wn.2d at 387.

[11] *Hennings*, 100 Wn.2d at 387.

Double jeopardy principles do not, however, apply to Sentencing Reform Act of 1981 (SRA) real facts hearings.[12] In *State v. Strauss*, the defendant disputed the factual basis for his exceptional sentence, and this court reversed and remanded for an evidentiary hearing.[13] The sentencing court again imposed an exceptional sentence. The Supreme Court held the double jeopardy clause was not violated, observing that an SRA evidentiary hearing lacks two of the "hallmarks of [a] trial on guilt or innocence" found in *Bullington*:

> The SRA requires the party offering the evidence to bear the burden of proof by a preponderance of the evidence, rather than by proof beyond a reasonable doubt. Also, a sentencing judge's discretion under the SRA is not restricted in the same manner or to the same extent as the factfinder's discretion in *Bullington*.[14]

▆▆▆ Here the State asked for a manifest injustice disposition above the standard range. H.J. contends this is similar to *Bullington* and *Hennings* in that the court can enter such a disposition only if the State proves beyond a reasonable doubt that a disposition within the standard range would pose a clear danger to society.[15] As H.J. points out, the court in *Strauss* relied heavily on the burden of proof element to distinguish SRA evidentiary hearings, which require only proof by a preponderance of the evidence.[16] But here, the court rejected the State's manifest injustice request without determining whether it was factually supported, so the burden of proof was not material.

Further, in *Bullington* and *Hennings*, the court and jury had engaged in extensive fact finding.[17] Here, the juvenile court made no findings in its initial oral ruling. Rather, the

---

[12] *State v. Strauss*, 119 Wn.2d 401, 410-12, 832 P.2d 78 (1992).

[13] 54 Wn. App. 408, 421-23, 773 P.2d 898 (1989).

[14] *Strauss*, 119 Wn.2d at 410 (citation omitted).

[15] *See State v. J.S.*, 70 Wn. App. 659, 664, 855 P.2d 280 (1993); *State v. Gutierrez*, 37 Wn. App. 910, 914, 684 P.2d 87 (1984).

[16] *Strauss*, 119 Wn.2d at 410.

[17] *See Bullington*, 451 U.S. at 433-35; *Hennings*, 100 Wn.2d at 386.

court simply expressed the belief that the treatment available under a standard range disposition (as the parties believed it to be) was preferable to the treatment available under the manifest injustice commitment to JRA sought by the State:

> But I simply don't believe at this point that we have a viable treatment alternative at JRA and that there is a sufficient basis to find a manifest injustice. Well, *there might be a sufficient basis to find a manifest injustice, but I don't think that the product of that is the preferable way to go.* As difficult as it's going to be, I would rather see two months of—two years of supervision and attempting to get him into an appropriate treatment program.[18]

In short, H.J.'s disposition hearing did not exhibit the hallmarks of a trial on guilt or innocence.

The double jeopardy clause has a limited role in an ordinary proceeding to correct an erroneous sentence. "[T]he analytical touchstone . . . is the defendant's legitimate expectation of finality in the sentence. . . ."[19] H.J. is charged with knowledge that the standard range term of community supervision for his adjudication is 0 to 12 months, and he therefore has no legitimate expectation of finality in the length of community supervision. Indeed, its length remained unchanged. He contends, however, that he had a legitimate expectation of finality in the court's decision not to impose a manifest injustice disposition.[20]

Factors that influence a defendant's legitimate expectation of finality include completion of the sentence, the passage of time, the pendency of an appeal or review of the sentencing determination, or the defendant's misconduct in

---

[18] Report of Proceedings (June 29, 2001) at 92-93 (emphasis added).

[19] *Hardesty*, 129 Wn.2d at 311; *DiFrancesco*, 449 U.S. at 136-39.

[20] It is not entirely clear that the court "increased" H.J.'s sentence by imposing a manifest injustice disposition. H.J. contends that a manifest injustice disposition may be a reason to increase punishment for a new juvenile offense, and points out that it is a factor to consider in declination proceedings.

obtaining the sentence.[21] These factors do not support an expectation of finality here. H.J. had not completed his sentence; he had served only a month of supervision when the State filed its motion.[22] H.J. committed no misconduct in obtaining his sentence, but the mere absence of fraud or misconduct does not create an expectation of finality.[23]

H.J. also argues he had a legitimate expectation of finality because double jeopardy is violated when a court corrects a defective sentence beyond the extent necessary to bring the sentence into compliance with the sentencing statute. He relies upon *United States v. Fogel*[24] and *Miranda v. State*.[25] *Miranda*, however, is factually dissimilar and rests on Nevada state constitutional grounds; *Fogel* differs from this case because the length and severity of the original sentence in *Fogel* were statutorily permitted—the defect was merely technical and could have been corrected without vacating the entire sentence.[26]

H.J.'s disposition hearing did not have the hallmarks of a trial, his sentence was not statutorily authorized, and he had no legitimate expectation of finality in the erroneous sentence. H.J.'s amended disposition was not barred by double jeopardy.

Affirmed.

BECKER, C.J., and BAKER, J., concur.

---

[21] *Hardesty*, 129 Wn.2d at 311; *State v. Traicoff*, 93 Wn. App. 248, 256, 967 P.2d 1277 (1998).

[22] *See Hardesty*, 129 Wn.2d at 311; *Traicoff*, 93 Wn. App. at 256.

[23] *See Traicoff*, 93 Wn. App. at 256.

[24] 829 F.2d 77 (D.C. Cir. 1987).

[25] 114 Nev. 385, 956 P.2d 1377 (1998).

[26] *See Fogel*, 829 F.2d at 82.