FILED
COURT OF APPEALS
DIVISION II

2014 MAR 25 AM 8: 49

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43449-1-II |
| Respondent, | |
| v. | |
| ROBERT WAYNE RICE, | PART PUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Robert Wayne Rice appeals his convictions and sentence for felony harassment—death threat and for violation of a civil antiharassment protection order. Rice argues that (1) insufficient evidence supports his conviction for felony harassment—death threat, (2) the trial court improperly instructed the jury on the elements of violation of a civil antiharassment protection order, and (3) the trial court ordered an impermissibly long period of probation. The State concedes that insufficient evidence supports Rice's conviction for felony harassment. In the published portion of this opinion, we reverse the trial court's imposition of 48 months of probation and remand for resentencing. In the unpublished portion of this opinion, we accept the State's concession and reverse Rice's conviction for felony harassment—death threat, but we affirm Rice's conviction for violation of a civil antiharassment protection order.

## FACTS

While Robert Wayne Rice served time at the Clark County Jail he met Jody Beach, a custody officer at the jail. Rice subsequently made unwelcome advances toward Beach, such as sending her flowers, writing her notes, and asking her out to breakfast. In response to Rice's

unwelcome advances toward Beach, a Clark County Sheriff's sergeant instructed sheriff's deputies Jason Hafer and Scott Bain to tell Rice that Beach did not want Rice to contact her.

A.      *Rice's Threats To Kill Bain*

Hafer and Bain met Rice when he was at the courthouse on unrelated business. Hafer walked with Rice into an interview room in the courthouse, and there told Rice that Beach did not want Rice to contact her. The conversation between Hafer and Rice became heated, at which point Bain entered the conference room and informed Rice that Beach did not want Rice to contact her. Rice responded by repeatedly threatening to kill Bain. Bain responded by stepping back and unsnapping the holster on his stun gun. Rice continued to repeat his threats to kill Bain, at which time Bain arrested Rice for felony harassment—death threat (felony harassment).

Bain later testified as to how he felt when Rice threatened to kill him:

[Rice] was causing me fear of an assault.
. . . .
Somebody who's that angry and upset with me, telling me they're going to kill me, causes me concern.
. . . .

2A Verbatim Report of Proceedings (VRP) at 298-99.

[Rice] was in a different position that day. He was not quiet, content, sitting peacefully. He was extremely angry, livid. A—a wild look to him. His—his eyes—he was extremely aggressive.

2A VRP at 311.

B.      *Beach's Civil Antiharassment Protection Order*

At a hearing attended by both Beach and Rice, a court granted Beach a civil antiharassment protection order (antiharassment order) against Rice under chapter 10.14 RCW.

No. 43449-1-II

During the time that this antiharassment order was effective, Rice wrote a letter to Beach and sent it to the jail.

C.     *Trial and Sentencing*

The State charged Rice with felony harassment for threatening to kill Bain. The State also charged Rice with misdemeanor stalking for his advances towards Beach and with violation of an antiharassment order under RCW 10.14.120 and RCW 10.14.170 for writing a letter to Beach and sending it to the jail.

The trial court provided the following instruction to the jury on the charge of violation of an antiharassment order:

> To convict the defendant of the crime of violation of a court order, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That between January 20, 2011 and January 23, 2012, there existed a protection order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting acts or restraint provision of the order prohibiting contact with a protected party; and
>
> (4) That the defendant's act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers at 26. This jury instruction is based on an instruction from the *Washington Practice Jury Instructions*, designed for violations of orders under RCW 26.50.110(1)(a), rather

3

than violations of an antiharassment order under RCW 10.14.120, and RCW 10.14.170. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 36.51, at 635 (3d ed. 2011) (WPIC). Rice did not object to this instruction at trial.

The jury convicted Rice of felony harassment, misdemeanor stalking, and misdemeanor violation of an antiharassment order under RCW 10.14.120 and 10.14.170. The trial court sentenced Rice to 90 days of time served on the felony harassment charge, to run concurrently with the sentence on the two misdemeanor charges. The trial court also sentenced Rice to 182 days for each of the two misdemeanor charges, to run consecutively.

The trial court suspended 184 days of this sentence, and imposed 48 months of probation. Rice did not object to the 48 months of probation at sentencing. Rice appeals (1) his sentence to 48 months of probation, (2) his conviction for felony harassment, and (3) his conviction for violation of an antiharassment order.

ANALYSIS

SENTENCING: PROBATION

Rice argues that the trial court erred in sentencing Rice to 48 months of probation in violation of RCW 9.95.210(1)(a). We agree.

A.    *Rules Governing Our Interpretation*

A trial court lacks inherent authority to suspend a sentence. *State v. Gibson*, 16 Wn. App. 119, 127, 553 P.2d 131 (1976) (citing *State ex rel. Lundin v. Super. Ct., King County*, 102 Wash. 600, 174 P. 473 (1918)). Thus, when the trial court does suspend a sentence, it must exercise its authority in the manner provided by the legislature. *Gibson*, 16 Wn. App. at 127. A defendant

may challenge a sentence imposed in excess of statutory authority for the first time on appeal because "a defendant cannot agree to punishment in excess of that which the legislature has established." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002); *State v. Anderson*, 58 Wn. App. 107, 110, 791 P.2d 547 (1990).

Statutory interpretation is a question of law that we review de novo. *State v. Franklin*, 172 Wn.2d 831, 835, 263 P.3d 585 (2011). When interpreting the meaning and purpose of a statute, our objective is to determine the legislature's intent. *State v. Jones*, 172 Wn.2d 236, 242, 257 P.3d 616 (2011). Effect is given to the statute's plain meaning when it can be determined from the statute's text. *Jones*, 172 Wn.2d at 242.

If the statute is still susceptible to more than one interpretation after we conduct a plain meaning review, then the statute is ambiguous and we rely on statutory construction, legislative history, and relevant case law to determine legislative intent. *Jones*, 172 Wn.2d at 242. We construe statutes in a manner that avoids strained or absurd consequences. *State v. Merritt*, 91 Wn. App. 969, 973, 961 P.2d 958 (1998).

The rule of lenity applies to situations where more than one interpretation can be drawn from the wording of a statute. *State v. Snedden*, 149 Wn.2d 914, 922, 73 P.3d 995 (2003). "Under the rule of lenity, the court must adopt the interpretation most favorable to the criminal defendant." *State v. McGee*, 122 Wn.2d 783, 787, 864 P.2d 912 (1993).

B.      *RCW 9.95.210(1)(a) and* State v. Parent

RCW 9.95.210(1)(a) grants the trial court authority to suspend the sentence of a criminal defendant. RCW 9.95.210(1)(a) states in relevant part:

> [T]he superior court may suspend the imposition or the execution of the sentence and may direct that the suspension may continue upon such conditions and for such time as it shall designate, *not exceeding the maximum term of sentence or two years, whichever is longer.*

(Emphasis added.). Division One of this court interpreted the meaning of the phrase "the maximum term of sentence" in *State v. Parent*, 164 Wn. App. 210, 213, 267 P.3d 358 (2011) (quoting RCW 9.95.210(1)).

In *Parent*, Kerry Parent pleaded guilty to two counts of misdemeanor assault. 164 Wn. App. at 211. The trial court sentenced Parent to 12 months in prison for each assault count, to run consecutively, totaling 24 months in prison. *Parent*, 164 Wn. App. at 211. The trial court suspended 16 months of this prison term, and imposed 24 months probation for each count, to run consecutively, totaling 48 months of probation. *Parent*, 164 Wn. App. at 211. Parent appealed, arguing that "the maximum term of sentence" referred to the one "sentence" at the end of the case—regardless of the number of counts—thus limiting the trial court to sentencing Parent to 24 months of probation in the entire case. *Parent*, 164 Wn. App. at 212-14. The State argued that "the maximum term of sentence" referred to one additional "sentence" for each count in a case, allowing the trial court to sentence Parent to an additional 24 months of probation for each of Parent's two assault counts. *Parent*, 164 Wn. App. at 212.

Division One of this court held that the text of RCW 9.95.210(1)(a) could equally support either side's interpretation of "the maximum term of sentence." *Parent*, 164 Wn. App. at 213. Thus Division One applied the rule of lenity, and held that RCW 9.95.210(1)(a) limits the trial court to sentencing the defendant to 24 months of probation or the total combined prison sentence in a given case regardless of the number of counts. *Parent*, 164 Wn. App. at 213-14.

C.     *Application in Rice's Case*

Here, the parties' arguments mirror the arguments in *Parent*. Rice argues that we should follow *Parent*, and hold that RCW 9.95.210(1)(a)'s phrase "the maximum term of sentence" refers to the one overall sentence within a single case, regardless of the number of counts that the defendant is convicted of in that case, limiting the probationary period to 24 months. The State responds that we should not follow *Parent* because the phrase "the maximum term of sentence" refers to the trial court's "sentence" for a single count, and each additional count in the case allows for an additional "sentence" within that case.

We follow Division One by holding that RCW 9.95.210(1)(a) is ambiguous, that both parties provide equally plausible interpretations, and thus the doctrine of lenity supports Rice's interpretation.

RCW 9.95.210(1)(a)'s text does not make clear what the legislature intended. The legislature could have wanted to prevent a trial court from burdening a defendant with too much probation for a single offense, by tying the length of probation to each single offense committed. This would support the State's interpretation. But equally possible, the legislature could have wanted to prevent a trial court from burdening a defendant with a probation that runs too far into the defendant's future, by tying the length of probation to the date of sentencing. This would support Rice's interpretation.

RCW 9.95.210(1)(a) does not contain an explicit reference to multiple counts, nor does it contain explicit words referencing aggregation of counts such as "total," "aggregate," or

"combined." But it is exactly the lack of these explicit references that makes the phrase "the maximum term of sentence" in RCW 9.95.210(1)(a) ambiguous rather than clear.[1]

The State attempts to resolve the ambiguity by citing RCW 9.95.210(2), RCW 9.95.010, and RCW 9.95.100. But these statues do not resolve the ambiguity of RCW 9.95.210(1)(a).

RCW 9.95.210(2), uses the word "offense" in the singular tense with a clear intent to reference a single count. RCW 9.95.210(2) states in relevant part:

> In the order granting probation and as a condition thereof, the superior court may in its discretion imprison the defendant in the county jail for a period not exceeding one year and may fine the defendant any sum not exceeding the statutory limit for the offense committed.

RCW 9.95.210(2) does discuss "offense" in reference to individual offenses, as it relates to the statutory limits on monetary penalties. But RCW 9.95.210(2) does not use the words "sentence" or "maximum" in any context. In fact, it uses the phrase "statutory limit" when it could have instead used the word "maximum." The lack of similarity between the language of the two provisions limits RCW 9.95.210(2)'s ability to resolve the ambiguity in RCW 9.95.210(1)(a)'s use of the phrase "the maximum term of sentence."

---

[1] The State cites *Mortell v. State*, and argues that because "sentence" is singular in RCW 9.95.210(1)(a), it must have referenced a single count, rather than a single case. 118 Wn. App. 846, 850, 78 P.3d 197 (2003). But in *Mortell*, the Court held that the phrase "a gross misdemeanor" referenced a single crime. *Mortell*, 118 Wn. App. at 850. This is because it referenced "a" "misdemeanor," which inarguably references a single criminal offense. *See Mortell*, 118 Wn. App. at 850. Here, the fundamental ambiguity is that the singular word is not "misdemeanor," but, rather, is "sentence." "Sentence" could refer to one sentence per count, or it could refer to one sentence per case. Either way, the word "sentence" would be in the singular.

While RCW 9.95.010 and RCW 9.95.100 use the phrase "maximum term," both of these statutes preceded the Sentencing Reform Act of 1981,[2] and neither has been applicable since 1984. Thus these statutes are part of an outdated legal regime for sentencing. Furthermore, while these two statutory provisions concern prison sentences and release, they do not address the suspension of sentences. *See* RCW 9.95.010 and RCW 9.95.100. Thus it is not clear that the legislature intended to use the definition of "maximum term" found in these outdated statues when it codified RCW 9.95.210(1)(a).

Because RCW 9.95.210(1)(a)'s phrase "the maximum term of sentence" is ambiguous, and because both parties' interpretations plausibly describe its meaning, the doctrine of lenity supports Rice's interpretation of the statute. Thus here, we hold that the trial court may order probation only for the defendant's combined total prison sentence or 24 months, whichever is longer.[3]

Here, Rice was properly convicted of two misdemeanor convictions: misdemeanor stalking and violation of an antiharassment order. "[T]he maximum term of sentence" for these two crimes is not more than 24 months. *See* RCW 9.95.210(1)(a). Thus, we hold that the trial

---

[2] Ch. 9.94A.

[3] The State argues that this holding will lead to absurd results, because the trial court could sentence a defendant charged with the same counts to a longer period of probation than another defendant simply because the first defendant's claims were not consolidated into a single case. But it is not absurd to limit a court to a certain maximum across an entire case, because of the high chances that a single case will resolve all criminal causes of action related to a single set of related facts. This is particularly true in light of doctrines such as mandatory joinder and double jeopardy, which limit the State's ability to try claims against the same defendant on the same facts across multiple cases. *See* CrR 4.3; *State v. Turner*, 169 Wn.2d 448, 459, 238 P.3d 461 (2010); *State v. Elmore*, 154 Wn. App. 885, 899-900, 228 P.3d 760 (2010).

court could sentence Rice to a maximum of only 24 months of probation under RCW 9.95.210(1)(a), and thus erred by sentencing Rice to 48 months of probation. We reverse the trial court's sentence of Rice to 48 months of probation, and remand for resentencing consistent with this opinion. We address the remaining issues in the unpublished portion of this opinion.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

FELONY HARASSMENT: SUFFICIENCY OF THE EVIDENCE

Rice next argues that insufficient evidence existed to convict him of felony harassment because the State failed to provide any evidence that the threatened party (Bain) was placed in fear that Rice would actually carry out his threats to kill. The State concedes that there was insufficient evidence to convict Rice of felony harassment for the same reason. The State recommends reversal of Rice's felony harassment conviction and dismissal of the charge. We agree.

Evidence is sufficient if, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Hermann*, 138 Wn. App. 596, 602, 158 P.3d 96 (2007). We assume the truth of the State's evidence and all inferences that can reasonably be drawn from it. *Hermann*, 138 Wn. App. at 602. But the State continues to hold its burden of proving each element of the charged crime beyond a reasonable doubt. *Hermann*, 138 Wn. App. at 602.

RCW 9A.46.020(1) states that a person is guilty of harassment if they threaten to cause someone bodily injury without lawful authority, but only if "[t]he person by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(2)(b)(ii) states that the crime is a felony if the threat in question is a threat to kill.

Our Supreme Court has held that to sustain a conviction for felony harassment, the State must prove beyond a reasonable doubt that the victim had a reasonable fear that the threatening party would actually carry out his threat to kill him or her. *State v. C.G.*, 150 Wn.2d 604, 610-11, 80 P.3d 594 (2003). A victim's fear that the defendant will commit an assault or cause bodily injury to the victim is not sufficient. *See C.G.*, 150 Wn.2d at 610-11.

Here, the victim of the threat (Bain) testified that he feared that Rice would assault him, but did not testify that he feared that Rice would kill him. Nothing in Bain's testimony, the only testimony that could establish that Rice's threat placed him in fear of death, supports that Rice's threats caused him to fear anything more than an assault. Because the defendant's threat must place the victim in reasonable fear that the defendant will kill him or her in order to sustain a conviction for felony harassment, and no evidence of such fear was presented at trial, the State properly concedes that insufficient evidence existed to convict Rice of felony harassment. *C.G.*, 150 Wn.2d at 610-11. Thus we reverse Rice's conviction for felony harassment and dismiss the charge with prejudice.

11

JURY INSTRUCTIONS: VIOLATION OF AN ANTIHARASSMENT ORDER

Rice next argues that we should reverse his conviction for violation of an antiharassment order under RCW 10.14.120 and RCW 10.14.170, for manifest constitutional error because the trial court did not properly instruct the jury on the elements of the offense. We disagree.[4]

We review alleged instructional errors de novo. *State v. Cross*, 156 Wn.2d 580, 615, 132 P.3d 80 (2006). "Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999).

Rice failed to object to the jury instructions he now seeks to challenge. Generally, an appellant cannot challenge jury instructions for the first time on appeal unless the erroneous instruction is a "manifest error affecting a constitutional right." RAP 2.5(a); *State v. Embry*, 171 Wn. App. 714, 756, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005 (2013). Omitting an element from an elements instruction is a manifest constitutional error because that instruction is the "yardstick" by which the jury measures guilt and innocence. *State v. Mills*, 154 Wn.2d 1, 6,

---

[4] Rice inaccurately frames his jury instruction argument as an argument that the State deprived Rice of adequate notice by making an untimely change to the crime it charged Rice with (from charging Rice under RCW 10.14.120 and RCW 10.14.170, to charging him under RCW 26.50.110(1)(a)). *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177(1995). But the State charged Rice under RCW 10.14.120 and RCW 10.14.170 in the charging documents and convicted him of the same. The actual issue that Rice is asking this court to address is whether the jury instructions properly instructed the jury on the elements of violation of an antiharassment order under RCW 10.14.120 and RCW 10.14.170.

109 P.3d 415 (2005). We therefore must review Rice's assignment of error despite his failure to object to the jury instructions at trial.[5] *Mills*, 154 Wn.2d at 6.

RCW 10.14.120 states in part:

Any willful disobedience by a respondent . . . of any . . . civil antiharassment protection order issued under this chapter subjects the respondent to criminal penalties under this chapter.

RCW 10.14.170(4) makes this offense a gross misdemeanor. Levels of culpability are defined by RCW 9A.08.010, which states, "A requirement that an offense be committed willfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements plainly appears."

Here, the trial court's instructions to the jury required the jury to find beyond a reasonable doubt that Rice knew of the protection order and that he knowingly violated it. The only culpability element to the offense of violating an antiharassment order under RCW 10.14.120 and RCW 10.14.170, is that the defendant willfully disobeyed the protection order. Regarding culpability, nothing in RCW 10.14.120 or RCW 10.14.170 makes "a purpose to impose further requirements plainly appear[]." RCW 9A.08.010(4). Thus the trial court's instructions sufficiently informed the jury that it had to find willfulness beyond a reasonable doubt to convict Rice of violation of an antiharassment order under RCW 10.14.120 or RCW

---

[5] Rice is correct that the jury instruction was copied from WPIC 36.51, which was meant for violations of RCW 26.50.110(1)(a), rather than RCW 10.14.120 and RCW 10.14.170. WPIC 36.51 suggests caution when using this template for charges under chapter 10.14 RCW. WPIC 36.51 at 635. But the question for this court is whether the instruction that was used at trial properly addressed all of the elements of RCW 10.14.120 and RCW 10.14.170, not the source from where the instruction was derived.

10.14.170, when it instructed the jury that it had to find that Rice knowingly violated the order. For this reason, Rice's conviction for violation of an antiharassment order under RCW 10.14.120 and 10.14.170, did not constitute manifest constitutional error.

We reverse the trial court's imposition of 48 months of probation and remand for resentencing. We also reverse Rice's conviction for felony harassment—death threat and dismiss the charge with prejudice. We affirm Rice's conviction for violation of a civil antiharassment protection order.

Worswick, C.J.

We concur:

Johanson, J.

Bjorgen, J.