# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48014-0-II |
| Respondent, | |
| v. | |
| CLINTON LAVERNE KING, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Clinton Laverne King appeals the two sentences imposed following his separate misdemeanor conviction for making a false or misleading statement to a public servant and felony conviction for second degree unlawful possession of a firearm charged under the same cause number. King contends the sentencing court erred by (1) requiring him to register as a felony firearm offender for his unlawful possession conviction, (2) suspending his sentence without a definite termination date for his making a false statement conviction, (3) imposing a crime victim assessment and criminal filing fee twice when his separate convictions stemmed from the same cause of action, and (4) imposing a $100 deoxyribonucleic acid (DNA) collection fee for his unlawful possession of a firearm conviction. We accept the State's concessions on issues two and three and reject King's other arguments. Therefore, we affirm in part, reverse in part, and remand for the sentencing court to correct the judgment and sentences in accordance with this opinion.

FACTS

In March 2015, the State charged King by amended information with making a false or misleading statement to a public servant (a gross misdemeanor) and second degree unlawful possession of a firearm.[1] These charges stemmed from King giving false information during a routine traffic stop and officers locating a loaded rifle in King's automobile.

On June 16, 2015, a jury found King guilty of making a false or misleading statement to a public servant. The jury, however, could not reach a verdict on the second degree unlawful possession of a firearm charge. The trial court declared a mistrial on that charge.

On July 29, 2015, the sentencing court sentenced King on the making a false statement conviction to 364 days with 244 days suspended. The sentencing court did not impose a definite termination date for the 244-day suspension. The sentencing court also imposed legal financial obligations (LFOs) as follows: $500 crime victim assessment and $200 criminal filing fee.

The State retried King on the second degree unlawful possession of a firearm charge. On August 25, 2015, a jury found King guilty.

On September 8, 2016, the sentencing court sentenced King on the unlawful possession of a firearm conviction. The sentencing court imposed LFOs as follows: $500 victim assessment, $200 criminal filing fee, and $100 DNA fee. King did not object to these mandatory LFOs.

The State requested that King be ordered to register as a felony firearm offender. King's criminal history included eight prior felonies and two prior firearm offenses. The State argued King's criminal history and prior firearm convictions made him a risk to community safety. King,

---

[1] The State also charged King with first degree unlawful possession of a firearm, but the trial court dismissed the charge at the State's request.

however, argued that the circumstances of the offense did not create an issue for community safety since King was driving in a truck with the rifle on the truck floor. The sentencing court ordered King to register with the felony firearm registration, relying on King's "page after page of criminal history." Report of Proceedings (RP) (Sept. 8, 2015) at 437. The sentencing court also noted that the rifle was loaded and all King had to do "was pick up the weapon, pull the trigger." RP (Sept. 8, 2015) at 437. The sentencing court concluded that King was a danger to the community and that the felony firearm registration requirement was appropriate.

The sentencing court checked off the boxes in section 2.6 of the judgment and sentence, indicating that King committed a felony firearm offense. The court considered his criminal history, and based upon his criminal history, the court decided that King should register as a felony firearm offender. King appeals his sentences.

## ANALYSIS

As an initial matter, King assigns error to both the July 29, 2015 and September 8, 2015 judgment and sentences. His notice of appeal, however, only refers to the September 8, 2015 judgment and sentence. Generally, this court only reviews those orders designated in the notice of appeal. *See* RAP 5.3(a)(3) (notice of appeal must designate decision for review). However, since both judgment and sentences contain the same cause numbers and originated from the same information, we reach the issues involving both judgment and sentences.

A.    FELONY FIREARM OFFENDER REGISTRATION

King first contends that the sentencing court abused its discretion in imposing the felony firearm registration requirement by failing to articulate a consideration of RCW 9.41.330(2)'s enumerated factors. We disagree.

It is within the sentencing court's discretion whether to require a defendant to register as a felony firearm offender. RCW 9.41.330(1).[2] We review a sentencing court's discretionary decisions for abuse of discretion. *State v. Miller*, 159 Wn. App. 911, 918, 247 P.3d 457, *review denied*, 172 Wn.2d 1010 (2011). A sentencing court abuses its discretion only where the sentencing court's decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). "A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (internal quotation marks omitted).

Under RCW 9.41.330, the court "must consider whether to impose" the registration requirement and, in doing so, the court "shall consider all relevant factors including, but not limited to" three suggested factors. RCW 9.41.330(1), (2). The three suggested factors are the defendant's criminal history, whether the defendant has previously been found not guilty by reason of insanity, and the defendant's propensity for violence. RCW 9.41.330(2)(a)-(c). By using the "including, but not limited to" language in the statutory provision, the legislature afforded courts latitude in their registration determinations. RCW 9.41.330(1); *see State ex rel. Graham v. Northshore Sch. Dist. No. 417*, 99 Wn.2d 232, 238, 662 P.2d 38 (1983) ("The Legislature specifically used the terms 'including, but not limited to'. . . and thus did not limit the discretion afforded [to the decision

---

[2] The legislature amended RCW 9.41.330(1) in 2016, Laws of 2016, ch. 183, § 3. The amendment did not alter the statute in any way relevant to this case; accordingly, we cite the current version of the statute.

maker].""). RCW 9.41.330 does not dictate that a sentencing court must explicitly articulate its consideration of each factor when determining whether to impose the registration requirement.

Here, the sentencing court considered relevant factors in reaching its determination. The judgment and sentence notes that King's second degree unlawful possession offense is a felony firearm offense (defined in RCW 9.41.010). Also, the judgment and sentence shows that the sentencing court checked the box that stated, "The court considered the following factors" when deciding whether to require felony firearm registration and then checked the box that stated, "[T]he defendant's criminal history." Clerk's Papers at 14. Moreover, at the sentencing hearing, the court specifically articulated its consideration of two of the suggested factors, detailing its concern over King criminal history and noting that there was a propensity of violence that would likely danger the community.

Accordingly, the sentencing court properly considered relevant factors in making its determination. The sentencing court did not abuse its discretion in requiring King to register as a felony firearm offender.

B.    SUSPENDED SENTENCE

King argues, and the State concedes, that the sentencing court erred by suspending King's gross misdemeanor/making a false statement sentence for 244 days without a definite termination date. We agree with King and accept the State's concession of error.

Trial courts lack inherent authority to suspend a sentence. *State v. Rice*, 180 Wn. App. 308, 312, 320 P.3d 723 (2014) (citing *State v. Gibson*, 16 Wn. App. 119, 127, 553 P.2d 131 (1976)). Therefore, a trial court's authority to suspend a sentence is limited to the manner provided

by the legislature. *Id*. The legislature has authorized the superior court to suspend a sentence, but it has limited the manner in which the superior court can suspend a sentence.

RCW 9.92.064 states, "In the case of a person granted a suspended sentence under the provisions of RCW 9.92.060, the court shall establish a definite termination date for the suspended sentence." Moreover, "[t]he court shall set a date no later than the time the original sentence would have elapsed and may provide for an earlier termination of the suspended sentence." RCW 9.92.064.

Here, the sentencing court did not set a definite termination date for King's suspended sentence. Therefore, under RCW 9.92.064, the trial court erred by exceeding its statutory authority.

C.      VICTIM'S ASSESSMENT/CRIMINAL FILING FEE

King next argues, and the State concedes, that the sentencing court erred by ordering him to pay a crime victim assessment fee and criminal filing fee twice when his convictions stem from the same cause of action. We agree with King and accept the State's concession of error.

RCW 7.68.035(1)(a) requires that the court impose a $500 crime victim assessment for a felony or gross misdemeanor conviction. The assessment "shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor." RCW 7.68.035(1)(a). The assessment is to be imposed on a per case or cause of action basis, which may include more than one conviction. RCW 7.68.035(1)(a). Likewise, RCW 36.18.020(2)(h) provides, "Upon conviction . . . an adult defendant *in a criminal case* shall be liable for a fee of two hundred dollars" criminal filing fee. (Emphasis added.)

Here, King was convicted of second degree unlawful possession of a firearm, a felony, and making a false statement, a gross misdemeanor. These charges originated from the same criminal case. The charges were not severed. Rather, the two convictions simply resulted from two separate trials that was required after a mistrial on the felony count at the first trial. Thus, only one $500 crime victim assessment and one $200 criminal filing fee should have been imposed.

D.      DNA FEE

King next contends the sentencing court's imposition of a mandatory $100 DNA fee under RCW 43.43.7541 violates substantive due process when applied to defendants who do not have the current or likely future ability to pay the DNA fee and violates equal protection when applied to repeat felony offenders who have to pay the DNA fee again even though that offender's DNA already has been collected. We disagree.

1.      Substantive Due Process

King argues that the imposition of a mandatory DNA fee under RCW 43.43.7541, without first establishing that he had or will have the ability to pay, violates his substantive due process rights because there is no rational basis for imposing costs against those who cannot pay. This argument fails.[3]

This exact argument was rejected in *State v. Seward*, 47581-2-II, 2016 WL 6441387, at *3) (Wash. Ct. App. Nov. 1, 2016). The legitimate state interest served by the DNA collection fee is the creation of a funding source for the collection, analysis, and retention of convicted offenders'

---

[3] We exercise our discretion under RAP 2.5 to address this issue raised for the first time on appeal. *See State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) ("RAP 2.5(a) grants appellate courts discretion to accept review of claimed errors not appealed as a matter of right.").

DNA profiles to facilitate future criminal identifications. *Id*. at *2. Imposing the DNA collection fee without first considering an offender's ability to pay is "rationally related to the legitimate state interests because even though some offenders may be unable to pay, some will" and an offender's "indigency may not always exist." *Id.* Thus, we follow *Seward* and reject King's substantive due process challenge.

2.     Equal Protection

King next argues that RCW 43.43.7541 violates equal protection because repeat felony offenders have to pay the DNA fee again even though that offender's DNA already has been collected. We disagree.

The Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution guarantee equal protection under the law. "Equal protection requires that similarly situated individuals receive similar treatment under the law." *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011).

The threshold requirement of an equal protection challenge is that a defendant "must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

The appropriate level of review in equal protection claims depends on the nature of the classification or the rights involved. *State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). We apply a strict scrutiny standard when state action involves suspect classifications like race, alienage, or national origin, as well as when the state action burdens fundamental rights. *Id*.

Intermediate scrutiny applies for semi-suspect classifications and important rights. *Id*. Otherwise, we apply rational basis review. *Id.*

Here, King concedes that he is not a member of a suspect or semi-suspect class and that the payment of a DNA fee does not involve a fundamental or important right. Therefore, we apply rational basis review.

Rational basis review is a highly deferential standard, and this court will uphold a statute under this standard unless its provisions are wholly irrelevant to the achievement of legitimate state objectives. *In re Det. of Stout*, 159 Wn.2d 357, 375, 150 P.3d 86 (2007). Rational basis requires only that the statute's means be rationally related to a legitimate state goal, and not that the means be the best way of achieving that goal. *State v. Manussier*, 129 Wn.2d 652, 673, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201 (1997).

King argues that within the group of all felony offenders, the class of felony offenders who have been convicted more than once are treated differently than first time offenders because repeat offenders have to pay the DNA fee even though their DNA already has been collected. We reject this argument for three reasons.

First, RCW 43.43.7541 does not treat repeat offenders differently than first time offenders. Under RCW 43.43.7541, every felony sentence must include the DNA fee. This means that under this statute all felony offenders are treated the same. A claimant must be treated differently from others who were similarly situated to prevail on an equal protection challenge. *Osman*, 157 Wn.2d at 485. King actually is seeking unequal treatment, not equal treatment. He claims that repeat offenders should be treated differently and relieved from payment of the DNA fee because they

do not need to have their DNA collected more than once. This type of policy argument can only be resolved by the legislature, not this court.

Second, even if RCW 43.43.7541 has a disparate impact on repeat offenders, King still must provide evidence of intentional or purposeful discrimination. *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 207, 128 S. Ct. 1610, 170 L. Ed. 2d 574 (2008). He has not done so here.

Third, the imposition of the DNA fee does not violate equal protection under rational basis review. King assumes that the only purpose of the DNA fee is to fund the collection and analysis of a particular defendant's DNA. But RCW 43.43.7541 is not so limited. RCW 43.43.7532 provides that DNA fees are used for the operation and maintenance of a DNA database, not simply to collect DNA from particular defendants. The collection of DNA fees from all defendants – even repeat offenders who already have provided their DNA—is rationally related to the legislature's interest in funding the operation and maintenance of the DNA database.

Accordingly, we hold that imposition of the mandatory DNA fee under RCW 43.43.7541 does not violate substantive due process or equal protection.

We affirm King's sentence requiring felony firearm offender registration and the imposition of DNA fees. We reverse the sentencing court's suspension of King's sentence on the gross misdemeanor conviction without a definite termination date and imposition of a crime victim assessment and criminal filing fee twice for separate convictions stemming from the same cause of action. Accordingly, we remand for the sentencing court to (1) correct King's judgment and sentence on the gross misdemeanor false or misleading statement conviction consistent with this opinion and (2) strike the crime victim assessment and criminal filing fee on the gross

misdemeanor judgment and sentence so that the crime victim assessment and criminal filing fee are only imposed once on the felony judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Sutton, J.